599 F.2d 880
 UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony MARTIN, Nolan Allen Hall, Searcy Baker Andrews,
Charles Masao Johnson, a/k/a Chas, Stephen Bruce Davenport,
a/k/a Steve Davenport, Lewis Nathaniel Dixon, a/k/a Baby
Boy, B.B. and Pretty Boy Floyd, Defendants-Appellants.
 Nos. 77-1271, 77-1272, 77-1281, 77-1282, 77-1338 and 77-1619.
 United States Court of Appeals,
Ninth Circuit.
 March 26, 1979.
 
 Roger Ruffin, San Francisco, Cal., for appellant Martin.
 William M. Goodman, Asst. Fed. Pub. Defender, San Francisco, Cal., for appellant Hall.
 Marcus S. Topel, San Francisco, Cal., for appellants Johnson and Andrews.
 Stephen Heiser, San Francisco, Cal., for appellant Davenport.
 Jerrold Ladar, San Francisco, Cal., for appellant Dixon.
 Linda C. Jamieson, U. S. Atty., San Francisco, Cal., William J. Corcoran, Atty., U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before WALLACE and HUG, Circuit Judges, and GRANT*, District Judge.
 HUG, Circuit Judge:
 
 
 1
 Searcy Baker Andrews, Charles Johnson, Anthony Martin, Lewis Dixon, Nolan Hall and Stephen Davenport appeal from their convictions for violations of federal laws relating to the distribution and possession of illegal drugs.
 
 
 2
 Defendants Andrews, Johnson, Hall and Martin were convicted after a two-day trial before the court, the primary evidence considered by the court being facts stipulated to by the prosecution and the defense. Defendants Davenport and Dixon were convicted after a jury trial. All of the convictions arose from the same set of events, and the cases have been consolidated on appeal. Although the appellants challenge their convictions on numerous grounds, the principal issues presented for review concern the admissibility of evidence obtained through the use of wiretaps and the requisite elements of the crime of facilitation of the commission of a felony. We affirm as to all parties except Davenport. We affirm his conviction for attempted possession of narcotics, but reverse his conviction for facilitation of the drug conspiracy.
 
 I.
 COURSE OF THE PROCEEDINGS
 
 3
 All defendants were charged in one count with conspiracy to distribute, and to possess with the intent to distribute, heroin and cocaine, in violation of 21 U.S.C. § 846. All defendants except Davenport were convicted of this charge. The jury acquitted Davenport of the conspiracy charge, but convicted him of attempted possession of cocaine or heroin.
 
 
 4
 All defendants were charged in various counts with use of a telephone to facilitate a conspiracy in violation of 21 U.S.C. § 843(b), and each was convicted on one or more counts arising out of these charges. Except in the case of Davenport, the sentence imposed on each defendant was ordered to run concurrently with his sentence for the conspiracy conviction. In Davenport's case, the sentence was ordered to run concurrently with the sentence for the attempted possession charge.
 
 
 5
 Andrews was also convicted of the substantive offense of possession with the intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). The sentence imposed was ordered to run concurrently with the sentence for the conspiracy conviction.
 
 II.
 FACTS
 
 6
 In mid-1975, the Drug Enforcement Administration (DEA) instituted an investigation into what they believed to be a highly sophisticated drug ring involving some of the appellants. To facilitate this investigation, in August of 1975 the DEA sought and received authorization to conduct a series of wiretaps. The primary basis for the appeals of the defendants revolves around the validity of these wiretaps under 18 U.S.C. § 2518, since the most significant evidence offered by the government in the prosecution below was obtained by means of these wiretaps.
 
 
 7
 The initial wiretap was ordered on August 18, 1975. The issuing court authorized a wiretap on the phone of Robert Earl Andrews, a defendant who is not a party to this appeal, authorizing the interception of the conversations of "Robert Earl Andrews and others as yet unknown". This authorization, although potentially effective for 20 days, was terminated after seven days, since the phone at the residence was replaced. On August 28, a new wiretap was ordered on this phone, naming Robert Andrews and appellants Searcy Baker Andrews and Charles Johnson as probable conversers. This wiretap was terminated after ten days.
 
 
 8
 On September 30, the issuing judge authorized a tap on the two phones in Johnson's residence, this order naming as probable conversers appellants Johnson and Andrews, other persons not parties to this appeal and "persons unknown". Although initially effective for 20 days, this wiretap was renewed after 17 days. A new order was issued on October 17, renewing the prior wiretap on Johnson's phones for another 20 days. This second order named appellants Johnson, Andrews, Martin and Hall as probable conversers. The tap was terminated at the end of 20 days.
 
 
 9
 On November 11, the issuing judge authorized the wiretapping of appellant Andrews's phone. Named as probable conversers were Searcy Baker Andrews, Charles Johnson and "others unknown". This tap lasted for the full authorized period of 20 days.
 
 
 10
 In addition to comprising a crucial portion of the evidence offered at trial, the information obtained through these wiretaps served other functions as well. Some of the information obtained from the earlier wiretaps was incorporated into the affidavits in support of the later wiretaps. Additionally, with the evidence obtained from these wiretaps, affidavits were drawn up in support of search and arrest warrants which were ultimately used against the appellants. Pursuant to these latter warrants: (1) Andrews was arrested in his car; on the floor of his car, behind the driver's seat, a leather bag was found which contained cocaine; (2) drugs were seized at the residence of roommates Martin and Hall; (3) guns located in Dixon's bedroom, within his reach, were seized; and (4) Johnson's residence was searched, but the only evidence seized that had any impact in the proceedings below, were his two telephones.
 
 III.
 ISSUES INVOLVED
 
 11
 The issues we are called upon to decide in this appeal are:
 
 
 12
 (1) Whether the evidence obtained from wiretaps should have been suppressed for various reasons;
 
 
 13
 (2) Whether a person who merely attempts to purchase a drug for his own use from a member of a conspiracy to sell that drug can be convicted, by that act alone, of facilitation of a conspiracy within the meaning of 21 U.S.C. § 843(b);
 
 
 14
 (3) Whether the search of Johnson's residence was illegal, justifying reversal;
 
 
 15
 (4) Whether the failure of Dixon's motion for severance or mistrial was reversible error;
 
 
 16
 (5) Whether the admission into evidence of guns found in Dixon's apartment was reversible error; and
 
 
 17
 (6) Whether there was sufficient evidence to support Andrews's conviction for possession of cocaine with the intent to distribute.
 
 IV.
 WIRETAP ISSUES
 
 18
 We turn first to the various contentions of appellants that the wiretaps were unlawful and that the evidence derived therefrom should have been suppressed. We are concerned here with both a Fourth Amendment requirement and the requirements under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520. The statutory requirements may, of course, be more restrictive than the requirements of the exclusionary rule for Fourth Amendment violations.
 
 
 19
 Section 2515 of 18 U.S.C. prohibits the receipt in evidence of the contents of a communication, or evidence derived therefrom, if the disclosure would be in violation of the Act. That section is triggered by § 2518(10)(a), which provides in part:
 
 
 20
 Any aggrieved person . . . may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the ground that
 
 
 21
 (i) the communication was unlawfully intercepted;
 
 
 22
 (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
 
 
 23
 (iii) the interception was not made in conformity with the order of authorization or approval
 
 
 24
 Section 2518(1)-(8) sets out the procedures and requirements in order to obtain a valid order to place a wiretap on the telephone and subsequent requirements of the agency following the wiretap.
 
 
 25
 A. Naming of Probable Conversers in Wiretap Application.
 
 
 26
 Andrews argues that the trial court erred in declining to suppress evidence obtained through the wiretaps authorized by the orders issued on August 28 and September 30. He contends that the Fourth Amendment and 18 U.S.C. § 2518(1)(b) (iv) and (3)(a) require that the application for wiretap authorization set forth sufficient facts to allow the issuing judge to conclude that there is probable cause to believe that each person named in the application as a probable converser is committing an offense. Andrews argues that he was named as a probable converser in the application, but that the DEA did not then have probable cause to believe that he was committing an offense.
 
 
 27
 There is nothing in the Fourth Amendment that imposes a requirement of the type urged by Andrews. In United States v. Donovan, 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977), the Court stated:
 
 
 28
 The Fourth Amendment requires specification of "the place to be searched, and the persons or things to be seized." In the wiretap context, those requirements are satisfied by identification of the telephone line to be tapped and the particular conversations to be seized.
 
 
 29
 Id. at 427, n.15, 97 S.Ct. at 668, n.15. There is no constitutional requirement that the persons whose conversations may be intercepted be named in the application. Id. Consequently, we hold that the Fourth Amendment does not require that the reasons for naming all probable conversers be shown in the application.
 
 
 30
 The question concerning the requirements of the statute is not as easily resolved. The subject of our inquiry is the statutory section governing the procedure for obtaining wiretap authorization, 18 U.S.C. § 2518.
 
 
 31
 An application for an order authorizing a wiretap must include the " identity of the person, if known, committing the offense and whose communications are to be intercepted". 18 U.S.C. § 2518(1)(b)(iv). The judge to whom the application is submitted may enter an order authorizing a wiretap if the application shows that "there is probable cause for belief that an individual is committing, has committed, or is about to commit" an offense enumerated in § 2516. 18 U.S.C. § 2518(3)(a). In United States v. Kahn,415 U.S. 143, 150-155, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974), the Supreme Court held that the investigative agency does not have to name in its application a probable converser who it does not have probable cause to believe is engaged in the criminal activity under investigation. The Court later held in Donovan that § 2518(1)(b)(iv) does require the investigative agency to name in its application Every probable converser who it has probable cause to believe is engaged in the criminal activity under investigation. 429 U.S. at 423-28, 97 S.Ct. 658. In effect, Andrews now urges us to hold that § 2518(1)(b)(iv) and (3)(a) require that Only those for whom such probable cause is shown may be named in the application. We disagree.
 
 
 32
 At the outset we note that there is nothing in the wording of the statute itself that compels us to adopt Andrews's position. Section 2518(1)(b)(iv), as construed in Donovan, describes those persons who Must be named in the application; it does not expressly prohibit the investigative agency from naming other individuals in the application. Section 2518(3)(a) permits a judge to issue an authorization order upon a showing that probable cause exists with respect to An individual ; it does not expressly require a similar showing with respect to Each person named in the application.
 
 
 33
 A restriction that the investigative agency can name in its application only those for whom probable cause exists is not consistent with the policy of Title III. The provisions of Title III were designed to accommodate two competing policy objectives: (1) the authorization of electronic surveillance as a weapon against organized crime; and (2) the protection of individual privacy. Kahn, 415 U.S. at 151, 94 S.Ct. 977. Section 2518(8)(d) of the Act requires that each person named in the application be given notice (which is denominated as an "inventory") within a reasonable time after the entry of the authorization order or the denial of the application, which shall contain the fact of the entry of the order, the date of the entry and the fact that during the period, wire and oral communications were or were not intercepted. It is mandatory to send the notice to those persons named in the application, but it is discretionary as to whether notice is to be sent to persons not named in the application. Therefore, the policy of protecting persons from unreasonable invasions of privacy is furthered by naming in the application all those persons likely to have their conversations intercepted, whether or not probable cause exists as to them, because those persons will benefit from the mandatory statutory notice requirements. In cases where probable cause is doubtful as to some conversers, an investigative agency should be encouraged to name more, rather than fewer, persons in the application.
 
 
 34
 In addition, the competing policy objective of aiding law enforcement would be frustrated if an investigative agency were required to make a showing of probable cause for every person named in the application. Under Donovan, the agency is required to name all persons for whom a showing of probable cause can be made. If the agency order can later be challenged on the ground that probable cause did not exist for one or more of the expected conversers, an impossible burden of exactness is imposed upon the agency in making a decision on which reasonable minds may differ. The policy behind the statute is best served by allowing latitude in naming an expected converser, even though probable cause as to that person ultimately may not be found.
 
 
 35
 In rejecting the argument that a defendant must be arrested when probable cause is first established, so that the right to counsel during questioning would be triggered, the Supreme Court considered the dilemma posed by that argument:
 
 
 36
 The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long.
 
 
 37
 Hoffa v. United States, 385 U.S. 293, 310, 87 S.Ct. 408, 417, 17 L.Ed.2d 374 (1966). We cannot believe that Congress intended to create a similar dilemma for law enforcement agencies attempting to follow the guidelines of § 2518.
 
 
 38
 B. Failure to Name Persons in Application and to Provide Notice.
 
 
 39
 Martin and Hall contend that the wiretap order issued on September 30 was improper because neither was named in the wiretap application, even though each was a probable converser who the investigative agency had probable cause to believe was committing the offense under investigation. Martin also complains that he was not provided with the "inventory" required by § 2518(8)(d). Both argue that evidence obtained from these wiretaps should have been suppressed pursuant to 18 U.S.C. § 2518(10)(a)(i).
 
 
 40
 As discussed in the previous section, the DEA was required by 18 U.S.C. § 2518(1)(b)(iv) to name in its wiretap application each probable converser who it had probable cause to believe was committing an offense. United States v. Donovan, 429 U.S. at 423-28, 97 S.Ct. 658. Additionally, those persons named in the wiretap applications are entitled to the inventory, designed to inform the persons of the filing of the application, whether an order was entered and, if so, the dates of the wiretap and whether oral communications were intercepted. 18 U.S.C. § 2518(8)(d). However, in Donovan, the Supreme Court held that §§ 2518(1)(b)(iv) and (8)(d) do not play substantive roles in the statutory framework to substantially implement the congressional intention to limit the use of intercept procedures; and therefore that failure to comply fully with those provisions does not invalidate an order authorizing a wiretap. 429 U.S. at 432-39, 97 S.Ct. 658.
 
 
 41
 There is a suggestion in Donovan that suppression would be justified if government agents Intentionally withheld the names of suspects from its application. 429 U.S. at 436, n. 23, 97 S.Ct. 658. There is no indication of such conduct in this case.
 
 
 42
 Therefore, even assuming that those sections were violated, appellants were not entitled to the suppression of evidence.
 
 
 43
 C. Misstatement in Affidavit.
 
 
 44
 Andrews contends that a misstatement in the affidavit supporting the application for the September 30 order to tap Johnson's telephone erroneously attributed a drug-related phone call to him, and therefore requires suppression of the evidence obtained from the wiretap.
 
 
 45
 We first consider whether exclusion was required because of a Fourth Amendment violation. In United States v. Hole, 564 F.2d 298 (9th Cir. 1977), we held that even a material misstatement in an affidavit supporting a search warrant will not invalidate the warrant under the Fourth Amendment, if the misstatement was "made in good faith and neither intentionally nor recklessly". Id. at 301-302. In the present case, the district court determined that the misstatement was innocent. Our review of the record fully supports this finding.
 
 
 46
 Moreover, we note that the misstatement in this case was not material. The phone call should have been attributed to Johnson. There was, however, probable cause to believe that Johnson, who was also named in the application, was committing an offense enumerated in the statute; therefore, there was probable cause for the issuing judge to authorize the wiretaps on Johnson's phones. See 18 U.S.C. § 2518(3)(a). There was no Fourth Amendment violation.
 
 
 47
 We next consider whether Andrews was entitled to suppression under the statute, 18 U.S.C. § 2518(10)(a)(i) on the ground it was unlawfully intercepted. Whether suppression is required under the statute is determined from the provisions of Title III rather than from the exclusionary rule developed to deter violations of the Fourth Amendment. United States v. Giordano, 416 U.S. 505, 524, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). We have earlier held that the naming of an expected converser against whom there may not have been probable cause does not vitiate the order. There is nothing in the express provisions of the statute which requires that an innocent and immaterial misstatement in the application for wiretap authorization invalidates the wiretap order. See United States v. Turner, 528 F.2d 143, 156-58 (9th Cir.), Cert. denied sub nom. Grimes et al. v. United States, 423 U.S. 966, 96 S.Ct. 426, 46 L.Ed.2d 371 (1975) (reasonable and good faith effort to comply with the minimization requirements). The misstatement in the application for the wiretap authorization, which was both innocent and immaterial, does not entitle Andrews to suppression under either Fourth Amendment or statutory standards.
 
 
 48
 D. Necessity.
 
 
 49
 All parties to this appeal join in Johnson's argument that the DEA failed to make an adequate showing of the necessity for wiretaps as required by 18 U.S.C. § 2518(1)(c) and (3)(c). We disagree. The judge who authorizes a wiretap has considerable discretion to determine whether an adequate showing of necessity has been made. United States v. Smith,519 F.2d 516, 518 (9th Cir. 1975). An investigative agency is not required to exhaust all possible investigative techniques before resorting to a wiretap. Id. In this case, the DEA made a showing that it had unsuccessfully attempted to investigate the parties to the conspiracy using several methods short of electronic surveillance. We conclude that the trial court correctly found that an adequate showing of necessity was made.
 
 
 50
 E. Duration.
 
 
 51
 The appellants also contend that the duration of the wiretaps was not properly minimized, as required by 18 U.S.C. § 2518(5). The length of time during which a wiretap is used is a crucial factor in determining whether there has been reasonable minimization of communications intercepted. United States v. Chavez, 533 F.2d 491, 493 (9th Cir.), Cert. denied, 426 U.S. 911, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976). In this case, the longest wiretap on any one set of telephones was that placed on Johnson's phones. The initial wiretap and the extension of the wiretap together extended over a period of 37 days. In light of the significance of Johnson's involvement in the conspiracy and the state of the investigation at the time the extension was granted, we think this period was reasonable. The wiretaps on the other phones were used only for brief periods of time and were also reasonable.
 
 V.
 FACILITATION OF THE CONSPIRACY
 
 52
 Dixon, Johnson, Andrews and Davenport contest the validity of their convictions under 21 U.S.C. § 843(b) for the use of a telephone to facilitate the conspiracy to possess with the intention to distribute and to distribute cocaine or heroin. We do not reach the contentions of Dixon, Johnson and Andrews, for the reason that their sentences under this conviction run concurrently with the sentences on the conspiracy conviction which we affirm. This circuit follows the concurrent sentence doctrine under which the appellate court, as a matter of discretion, may decline to review a conviction under one count if a conviction under another count is affirmed and the sentences run concurrently and no adverse collateral legal consequences for the appellant result from the additional conviction. United States v. Walls, 577 F.2d 690, 699 (9th Cir. 1978). We find no adverse collateral legal consequences to these applicants; and, in the exercise of our discretion, we decline to review these appellants' arguments on this issue.
 
 
 53
 Appellant Davenport's sentence on the felony facilitation count runs concurrently with the misdemeanor conviction for possession. However, he received a three-year sentence on the felony count, suspended to six months' confinement, with three years' probation upon release from confinement, whereas he received a sentence of six months only on the misdemeanor. We must therefore review the conviction on the facilitation count.
 
 
 54
 Davenport's appeal on this count presents us with a question of interpretation of 21 U.S.C. § 843(b), which prohibits the use of a telephone to facilitate certain drug-related felonies.[1]
 
 
 55
 Davenport specifically was charged in Count 19 of the indictment as follows:
 
 
 56
 On or about October 28, 1975, in the State and Northern District of California, STEPHEN BRUCE DAVENPORT, aka Steve, defendant herein, did, in violation of Title 21, United States Code, Section 843(b), knowingly and willfully use a communication facility namely, a telephone, in facilitating a conspiracy to possess with intent to distribute and to distribute heroin and cocaine, in violation of Title 21, United States Code, Sections 846 and 841(a) (1).
 
 
 57
 The telephone call specified in the indictment as the basis for the charge was a telephone call between Davenport and Johnson, in which Davenport attempted to purchase a small amount of cocaine. The evidence does not support a finding that Davenport knew of the existence of the conspiracy to distribute, nor that he had any involvement in the distribution of cocaine or heroin himself. Davenport, in the telephone conversation was, at most, attempting to purchase cocaine for his personal use.
 
 
 58
 Although there was some effort by the prosecution to establish from the telephone conversation that Davenport was attempting to acquire cocaine for distribution, the small amount he sought to obtain (2-4 grams) is not ordinarily consistent with an intent to distribute. There was mention in the conversation of wishing to borrow scales to "weigh something out" and of "splitting it up", but it was apparent from the testimony of an expert witness and a lay witness associated with Davenport that this had nothing to do with the cocaine conspiracy, but rather, related to the division of some marijuana that he and a friend had purchased. Furthermore, it is evident from a careful review of the transcript, the instructions of the court, and the numerous questions from the jury concerning those instructions, that both the judge and the jury were of the opinion that Davenport was not attempting to purchase cocaine for distribution, but was attempting to purchase cocaine from Johnson for his own use.
 
 
 59
 The basic premise of Davenport's argument is that a purchaser's relationship to the distribution conspiracy from which he buys is of such a marginal nature that he cannot be considered a "facilitator" within the meaning of the statute. Simply stated, he argues that a buyer cannot facilitate the very sale which creates his status. The government argues that a conspiracy is an ongoing enterprise, a continuing agreement, and that buyers encourage and facilitate the continuation of that agreement through their purchases. In spite of its logical appeal, the strength of the government's argument breaks down in the face of contrary considerations.
 
 
 60
 We have found no decisions of this circuit which lend support to the government's position that the distribution of drugs or an agreement to distribute drugs is "facilitated" by a purchaser of the drugs. In each case in which we have upheld a conviction for facilitation, the defendant's role in the distribution of drugs has been far more substantial than that of a buyer for personal consumption. E. g., United States v. Turner, 528 F.2d 143 (9th Cir.), Cert. denied sub nom. Grimes et al. v. United States, 423 U.S. 996, 96 S.Ct. 426, 46 L.Ed.2d 371 (1975) (conspirator); United States v. Padilla, 525 F.2d 308 (9th Cir. 1975) (conspirator/seller); United States v. Smith, 519 F.2d 516 (9th Cir. 1975) (conspirator; United States v. Veon, 474 F.2d 1 (9th Cir. 1973) (sellers).
 
 
 61
 In Rewis v. United States, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971), the Supreme Court approved the Fifth Circuit's ruling in Rewis v. United States, 418 F.2d 1218 (5th Cir. 1969), which held that a gambler whose participation in a gambling business was only that of a bettor, and not a proprietor, could not be found guilty of acting with intent to facilitate the unlawful gambling activities in violation of 18 U.S.C. § 1952. The Supreme Court agreed that "intent to . . . facilitate" requires more than a mere "desire to patronize the illegal activity". Rewis, supra 401 U.S. at 811, 91 S.Ct. at 1059. Therefore, a mere customer did not facilitate the business he patronized. This interpretation of the ambiguous term "facilitation" was supported in the opinion by the legislative history behind the statute in question, and by reference to the general principle that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity . . .". Accord, United States v. Bass, 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971). Our circuit has since applied this interpretation of the term "facilitation" under 18 U.S.C. § 1952 in United States v. Gibson Spec. Co., 507 F.2d 446, 450-51 (9th Cir. 1974). A difference in the nature of the illicit business should not change the basic principle enunciated by the Supreme Court and by our circuit that a mere customer's contribution to the business he patronizes does not constitute the facilitation envisioned by Congress.
 
 
 62
 Our conclusion is also supported by the legislative history of the Comprehensive Drug Abuse Prevention and Control Act of 1970, of which § 843(b) is a part. The scheme of the Act shows that Congress intended to draw a sharp distinction between distributors and simple possessors, both in the categorization of substantive crimes and in the resultant penalties. See United States v. Swiderski, 548 F.2d 445, 449-50 (2d Cir. 1977) (discussing legislative history). To hold that persons who merely buy drugs for their personal use are on equal footing with distributors by virtue of the facilitation statute would undermine this statutory distinction. Davenport's conviction on the facilitation count is therefore reversed.
 
 VI.
 OTHER CONTENTIONS
 
 63
 A. Johnson.
 
 
 64
 Johnson contends that federal officers improperly broke into his residence to execute a search warrant, in violation of 18 U.S.C. § 3109. However, the only objects obtained in that search were Johnson's telephones and the corresponding telephone numbers. The telephones themselves did not contribute to Johnson's conviction, and the telephone numbers were already known to the DEA. Therefore, even assuming a violation of the statute, Johnson has not shown that he is entitled to any relief.
 
 
 65
 B. Dixon.
 
 
 66
 Dixon challenges the trial court's refusal to grant his request for a severance, or alternatively, a mistrial. The denial of a motion for severance is a matter largely within the discretion of the trial judge. United States v. Kennedy, 564 F.2d 1329, 1334 (9th Cir. 1977), Cert. denied sub nom. Myers v. United States, 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978). Neither a denial of a severance motion nor a denial of a motion for mistrial will be overturned absent a clear showing of prejudice. See United States v. Nace, 561 F.2d 763, 769 (9th Cir. 1977). Dixon has not shown that he was entitled to a severance nor that he ultimately suffered any prejudice from the joint trial. On the record before us we cannot say that the trial court erred in denying Dixon's request.
 
 
 67
 Dixon also contends that the admission into evidence of guns that were seized from his residence constituted reversible error. He argues that the guns were irrelevant and highly prejudicial. The guns were, however, relevant to show Dixon's involvement in the narcotics trade. See United States v. Wiener, 534 F.2d 15, 18 (2d Cir.), Cert. denied, 429 U.S. 820, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976). Whether the prejudicial effect of evidence so far outweighs its probative value that the evidence should be excluded is a determination in which the trial court is given wide discretion. E. g., United States v. Mahler, 452 F.2d 547 (9th Cir. 1971), Cert. denied, 405 U.S. 1069, 92 S.Ct. 1517, 31 L.Ed.2d 801 (1972). Under the facts of the present case, we cannot say that the trial court abused its discretion in admitting the weapons. See Wiener, 534 F.2d at 18.
 
 
 68
 C. Andrews.
 
 
 69
 Andrews also contends that there is insufficient evidence to support his conviction for possession of contraband. The record shows that Andrews was arrested alone in the car in which the contraband was found, the contraband lying in a bag behind the front seat. From this evidence and the other surrounding circumstances in evidence, the finder of fact could rationally conclude that Andrews was guilty beyond a reasonable doubt. See United States v. Irion, 482 F.2d 1240, 1245-48 (9th Cir.), Cert. denied, 414 U.S. 1026, 94 S.Ct. 454, 38 L.Ed.2d 318 (1973).
 
 VII.
 CONCLUSION
 
 70
 Davenport's conviction for facilitation of a conspiracy under 21 U.S.C. § 843(b) is reversed. All other convictions are affirmed.
 
 
 
 *
 Honorable Robert A. Grant, Senior United States District Judge for the Northern District of Indiana, sitting by designation
 
 
 [1]
 Section 843(b) provides in part: "It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter . . .." (being the subchapter dealing with drug-related offenses)