**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert S. ADLER,**
**Defendant–Appellant.**

**No. 87–3092.**

United States Court of Appeals,
Ninth Circuit.

Argued Aug. 1, 1988.

Submitted Nov. 23, 1988.

Decided Nov. 30, 1988.

Mark King Leban, Bailey, Gerstein, Rashkind & Dresnick, Miami, Fla., for defendant-appellant.

Kenneth G. Bell, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Before KOELSCH, ALARCON and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Robert Adler, appellant, was convicted of conspiring to distribute, and of distributing, cocaine in excess of 500 grams, in violation of 21 U.S.C. §§ 846, 841(a), and 841(b)(1)(B) (counts I and III). Appellant was also convicted of unlawful use of a communications facility, in violation of 21 U.S.C. § 843(b) (count II). On counts I and III, appellant received concurrent, five-year terms of imprisonment. On count II, he received a consecutive two-year sentence.

Adler appeals, claiming that jury instructions were improper, insufficient evidence supports his conviction on count II, joinder with a co-conspirator denied him due process, and 21 U.S.C. § 841(b)(1)(B) is unconstitutional.

We affirm.

I

On December 3, 1986, the Royal Canadian Mounted Police (RCMP) received detailed information, from a confidential informant, relating to an impending cocaine transaction. On the basis of that information, RCMP agents placed Terry Germain under surveillance. Germain was then in West Vancouver, B.C., Canada.

On December 5, 1986, Germain met Kenneth Linn. Following that meeting, Linn immediately withdrew cash from two Vancouver banks and visited four other Vancouver banks. Into each bank, Linn carried a brown briefcase.

On December 8, 1986, while the RCMP kept Linn under surveillance, Linn travelled from Vancouver to Seattle. In Seattle, Linn registered at the Vance Hotel. The Drug Enforcement Administration (DEA) began surveillance.

On December 9, 1986, at approximately 6:25 p.m., a DEA agent observed Linn placing a telephone call from the Vance lobby. The agent overheard Linn inquire about the arrival of a flight due from Florida. The call lasted no more than one minute. Linn immediately placed a second telephone

call. The DEA agent overheard the second call. In the second call, Linn informed another party that a previous plan was running late and that Linn would make contact again in one hour. The second call lasted no more than ninety seconds. Linn promptly ascended by elevator to his room at the Vance.

At trial, a DEA agent testified that approximately three minutes passed from the time Linn left the Vance lobby to the time he entered his Vance room, between 6:25 p.m. and 6:35 p.m.

At 6:35 p.m., DEA agents observed Linn leave the Vance Hotel and walk toward the Sheraton Hotel. He carried the brown briefcase.

At 7:30 p.m., Linn emerged from an elevator at the Sheraton which services upper floors. Linn entered the Sheraton lounge, where he made two telephone calls. He was joined by appellant.

An airline ticket recovered from appellant's Sheraton room indicated that appellant had just arrived from Florida.

Immediately before joining Linn in the Sheraton lounge, appellant placed a "bulky" manila envelope in the Sheraton hotel safety deposit box.

After sitting with appellant in the lounge for approximately ten minutes, Linn departed the Sheraton. Linn was promptly met by coconspirator Leo Klein, who sat waiting in a pickup truck outside the hotel. Linn and Klein undertook activities which focused their attention on the seat of the pickup truck. Linn was then returned, by Klein, to the Vance Hotel.

Appellant meanwhile returned to his hotel room at the Sheraton.

Klein was apprehended on December 9, 1986, enroute to Spokane, Washington. From Klein's pickup truck, two one-kilogram bricks of cocaine were seized. The cocaine was wrapped in duct tape.

Linn was arrested on December 10, 1986, near the United States–Canadian border, travelling northward. From Linn, DEA officers seized a small amount of cocaine, a Vance Hotel receipt, a brown briefcase, a telephone book which contained a listing for the "Tide Financial Investment Corp.," Sheraton Hotel matchbooks distributed on the upper floors of the Sheraton, and three rolls of duct tape.

Appellant was arrested on December 10, 1986. At that time, his room was searched, pursuant to a search warrant.

In appellant's room, DEA agents found a small quantity of cocaine, cocaine paraphernalia, a Sheraton safety deposit box key, $1,641 in cash, an airline ticket from Florida to Seattle, a professional card bearing the name "Tide Financial Investment Corporation," and receipts and check stubs for two cashier's checks.

DEA agents opened the Sheraton safety deposit box. Inside, they discovered two cashier's checks, matching receipts and stubs found in appellant's room and drawn on the Canadian banks visited by Linn on December 5, 1986. The checks were payable to the "Tide Water Financial Corporation" and totalled $14,271. DEA agents also retrieved from the box one "bulky" manila envelope. In that envelope, they found ten smaller envelopes, containing a total of $45,000 in cash.

Appellant's fingerprints were found on one of the white cash envelopes in the safety deposit box, on the inside plastic packaging around one of the one-kilogram "bricks" of cocaine seized from Klein's truck, and on the cocaine package wrapped in duct tape.

Laboratory tests matched the pieces of duct tape around the two cocaine "bricks" found in Klein's truck with two rolls of duct tape found in Linn's vehicle. Laboratory analysis indicated the two packages of cocaine removed from Klein's truck weighed 995.1 grams and 996.6 grams. Cocaine in both packages was 92 percent pure.

The trials of appellant and Linn were not severed. Prior to trial, the court granted Linn's *in limine* motion to exclude reference to Linn's use of a false name. The proscription applied against both the government and Adler.

On the first day of trial, after Linn's opening statement, counsel for Adler stat-

ed: "I am going to have a motion to make. Maybe I can make it after my opening statement." The trial judge responded: "Please." At the close of that day, the still unspecified motion was put over until the second day of trial.

On the second day of trial, counsel for appellant stated that his client's defense and that of Linn were antagonistic. He moved to sever the trial. The court declined to grant a severance, finding appellant's defense and Linn's defense not mutually exclusive.

After closing arguments, appellant proposed a jury instruction stating *inter alia* that "a person who seeks to purchase cocaine for his own use is not by that act a member of a conspiracy to facilitate the distribution of controlled substances." The court declined to give the precise jury instruction.

At the close of trial, appellant moved for acquittal on count II, claiming that insufficient evidence was presented to prove his use of a telephone was for an unlawful purpose. The court denied that motion. Appellant moved to have the mandatory minimum sentencing provisions under 21 U.S.C. § 841(b)(1)(B), as amended by the Anti–Drug Abuse Act of 1986, declared unconstitutional. That motion was also denied.

Appellant was convicted of conspiring to distribute, and of distributing, cocaine in excess of 500 grams, in violation of 21 U.S.C. § 846 (counts I and III). Appellant was further convicted of unlawful use of a communications facility, in violation of 21 U.S.C. § 843(b) (count II). Appellant received concurrent five-year terms of imprisonment on counts I and III. On count II, he received a consecutive two-year term.

Adler's appeal is timely. We have jurisdiction under 28 U.S.C. § 1291.

## II

Appellant argues that his conspiracy conviction should be reversed since the trial court declined to instruct that "personal use" purchases of cocaine do not establish membership in a conspiracy to distribute.

We review de novo a district court's refusal to give a jury instruction on defendant's theory of the case. *United States v. Doubleday*, 804 F.2d 1091, 1093 (9th Cir.1986), *cert. denied*, 481 U.S. 1005, 107 S.Ct. 1628, 95 L.Ed.2d 201 (1987). Generally, whether the instructions are sufficient is decided by reviewing the instructions as a whole, *United States v. Hayes*, 794 F.2d 1348, 1351 (9th Cir.1986), and a district court is not required to give language requested by either party. *United States v. Washington*, 797 F.2d 1461, 1476 (9th Cir.1986). "[S]o long as the instructions fairly and adequately cover the issues presented, the judge's formulation of those instructions ... is a matter of discretion." *United States v. Echeverry*, 759 F.2d 1451, 1455 (9th Cir.1985).

A defendant is entitled to an instruction on a proposed theory of the case only "if [that] theory is legally sound and evidence in the case makes it applicable." *United States v. Scott*, 789 F.2d 795, 797 (9th Cir.1986) (citing *United States v. Escobar de Bright*, 742 F.2d 1196, 1201 (9th Cir. 1984)). This remains true even if the relevant evidence is " 'weak, insufficient, inconsistent or of doubtful credibility.' " *Doubleday*, 804 F.2d at 1095 (citations omitted). "However, for the refusal to be erroneous, the proposed instruction must have some 'foundation in the evidence.' " *Id.* at 1095 (citing *United States v. Winn*, 577 F.2d 86, 90 (9th Cir.1978)).

While a "legally sound" defense may exist, based on the conclusion that mere purchases of cocaine for personal use do not establish a conspiracy to distribute, *United States v. Martin*, 599 F.2d 880 (9th Cir. 1979), such a legal theory must be "supported by the evidence." *See United States v. Polizzi*, 801 F.2d 1543, 1549 (9th Cir.1986).

The record does not contain evidence supporting the theory that appellant purchased the small amounts of cocaine recovered from his room from either Linn or Klein. Moreover, the tested purities of the trace of cocaine found in appellant's room and

the bricks of cocaine seized from Klein were different. There is simply no evidence of "personal use" cocaine purchases by appellant at any time during the events underlying his conspiracy conviction. Likewise, no evidence exists that cocaine found in appellant's possession was, as in *United States v. Bailey*, 607 F.2d 237 (9th Cir. 1979), *cert. denied*, 445 U.S. 934, 100 S.Ct. 1327, 63 L.Ed.2d 769 (1980), exclusively for "personal use." Accordingly, there does not exist a foundation in the record for appellant's requested instruction—essentially that personal use purchases from Linn and Klein failed to make appellant a coconspirator.

Viewed as a whole, the district court's instructions "fairly and adequately cover the issues presented." *Echeverry*, 759 F.2d at 1455. The jury was instructed on each element of conspiracy to distribute. The jury was required to find beyond a reasonable doubt, (1) "an *agreement* to distribute *more than five hundred grams* of a mixture and substance containing cocaine....," (2) "that the defendant *knowingly entered into that conspiracy*," (3) "that there was a joint *plan to distribute cocaine*," and (4) "that the defendant *joined ... knowing of the unlawful plan* and *intending to help carry it out.*"

Since these instructions "fairly and adequately cover the issues presented," and serve to prevent conviction on the conspiracy charge for a mere "personal use" purchase, the refusal of appellant's precise, negative language was well within the discretion of the district judge. *Echeverry*, 759 F.2d 1451, 1455 (9th Cir.1985). Her refusal to incorporate the requested language does not constitute reversible error.

### III

Appellant claims that insufficient evidence was introduced to support his conviction for unlawful use of a communication facility in violation of 21 U.S.C. § 843(b).

We review the record as a whole, in the light most favorable to the government, when evaluating this claim. *United States v. Normandeau*, 800 F.2d 953, 958 (9th

Cir.1986). Our inquiry is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Normandeau*, 800 F.2d at 959 (emphasis in original). If so, we are required to affirm. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Normandeau*, 800 F.2d at 959.

"In order to prove a violation of 21 U.S.C. § 843(b), the government must establish knowing and intentional use of a communications facility, e.g., a telephone, to facilitate the commission of [the] narcotics offense." *United States v. Phillips*, 664 F.2d 971, 1032 (5th Cir.1981); *see also United States v. Rey*, 641 F.2d 222, 224 n. 6 (5th Cir.1981).

Appellant argues that his use of a telephone did not "facilitate" the conspiracy to distribute cocaine.

"Facilitation" is established by showing that use of a communications facility (here, a telephone) made easier or less difficult, or assisted or aided, the narcotics offense. *Phillips*, 664 F.2d at 1032; *United States v. Watson*, 594 F.2d 1330, 1343 (10th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979).

Use of a telephone may facilitate either the defendant's own involvement or another person's possession or distribution of the narcotic. *Watson*, 594 F.2d at 1342 n. 14; *Phillips*, 664 F.2d at 1032; *United States v. McLernon*, 746 F.2d 1098, 1106 (6th Cir. 1984); *see also United States v. Jones*, 612 F.2d 453, 457 (9th Cir.1979), *cert. denied*, 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980).

Appellant asserts that a telephone call from his room to the Vance Hotel, where Linn was staying, could not have been received by Linn. Appellant describes Linn's receipt of this telephone call as "virtually impossible." The adverb "virtually" is a revealing qualification.

Appellant observes that telephone records kept by the Sheraton Hotel indicate a call to the Vance Hotel from appellant's room at 6:29 p.m. on December 9, 1986.

Appellant notes that DEA agents observed Linn leaving his room at the Vance in the vicinity of 6:25 p.m. Immediately thereafter, DEA agents overheard Linn placing two telephone calls from the Vance Hotel lobby. These calls, together, lasted no more than two minutes and 30 seconds. Appellant last notes that DEA agents testified that approximately 3 minutes elapsed from the time Linn completed his final call to the time Linn reentered his hotel room.

Appellant concludes that, since two minutes and 30 seconds (Linn's recorded period in the lobby) coupled with three minutes (estimated time for Linn's return to the hotel room) totals five minutes and 30 seconds, and since Linn was initially observed departing his room at 6:25 p.m., Linn *could not possibly* have received a telephone call placed by appellant at 6:29 p.m. (Sheraton time). Appellant argues that the earliest moment when Linn might have received a telephone call would have been 6:30:30 p.m., or one minute and 30 seconds after appellant called Linn's hotel. Thus, he concludes, the telephone call was immaterial to the narcotics offense.

While intriguing, this analysis is not compelling. First, the DEA–recorded times are *approximate.* Second, the most obvious explanation for the slight discrepancy in times is that Sheraton clocks and DEA timepieces were not synchronized. Third, the inference that appellant's call was, in fact, received and served a facilitating purpose is buttressed by the subsequent surveillance of Linn. While standing in the Vance lobby, just past 6:25 p.m., Linn was overheard seeking information on appellant's whereabouts from an airline. However, at 6:35 p.m. (DEA–recorded time) Linn knew precisely where appellant was located, and proceeded to walk directly to appellant's location. A reasonable inference is that appellant provided Linn with the information on where he was located and when they should meet by means of the telephone call placed to Linn's room between 6:25 p.m. and 6:35 p.m.

A rational trier of fact could have inferred that the telephone call from appellant's hotel room to the Vance Hotel was

for the purpose of informing Linn that the narcotics transaction was set, that appellant was ready to undertake the exchange of narcotics for money, and that appellant was located at the Sheraton Hotel. The foregoing facts sufficiently establish facilitation under 21 U.S.C. § 843(b).

Finally, appellant relies on *United States v. Martin,* 599 F.2d 880 (9th Cir.1979), for the proposition that reversal is required where the specific content of a telephone call, found by a jury to have facilitated the narcotics offense, is unknown.

Appellant's analysis of *Martin* collapses under the mildest scrutiny. While the content of the telephone call was known in *Martin,* the circumstances surrounding that call negated membership in a conspiracy to distribute. The sole purpose of the *Martin* call was expressly to purchase narcotics for "personal use." The caller was not otherwise implicated in a conspiracy to distribute. No evidence in *Martin* suggested that the caller knew of, or participated in, a conspiracy to distribute; accordingly, the 21 U.S.C. § 843(b) ("telephone") count could not be sustained.

The same cannot be said of the appellant here. Strong indicia suggested that a conspiracy was afoot and that appellant was participating in that conspiracy (e.g. detailed information from a reliable informant, the anticipated arrival of cocaine from Florida, Linn's withdrawals from and sequential visits to Vancouver banks, the content of Linn's telephone conversations in the Vance lobby, check stubs in Adler's room which matched the Vancouver checks drawn by Linn, the cash found in appellant's safety deposit box, appellant's recent Florida airline ticket, Linn's prompt meeting with Klein outside appellant's hotel after Linn's meeting with appellant, and other activities documented in the surveillance records). Inapposite for the same reason are *United States v. Rivera,* 775 F.2d 1559 (11th Cir.1985), *cert. denied,* 475 U.S. 1051, 106 S.Ct. 1275, 89 L.Ed.2d 582 (1986), and *United States v. Mims,* 812 F.2d 1068 (8th Cir.1987).

Moreover, the telephone call in this case appears to have provided information

which appellant did not previously possess and to have triggered a prompt response by appellant. We conclude that sufficient evidence exists to support appellant's conviction under 21 U.S.C. § 843(b).

## IV

■ Appellant claims that the district court's denial of the motion to sever denied to him due process.

First, appellant argues that his defense and the defense of coconspirator Linn were "inconsistent." Second, appellant argues that the court's grant of Linn's *in limine* motion, excluding reference to Linn's use of an alias, unfairly denied appellant the opportunity to contrast his non-use of an alias with Linn's use of an alias. These claims are without merit.

Fed.R.Civ.P. 8(b) permits joinder of defendants. Fed.R.Civ.P. 14 permits severance "[i]f it appears that a defendant ... is prejudiced by ... joinder ... of defendants...." Motions for severance are committed to the sound discretion of the trial judge. *United States v. Polizzi*, 801 F.2d 1543, 1553 (9th Cir.1986); *United States v. Adams*, 581 F.2d 193, 197 (9th Cir.1978), *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978). We review denial of severance for abuse of discretion. *United States v. Ortiz*, 603 F.2d 76, 78 (9th Cir. 1979), *cert. denied*, 444 U.S. 1020, 100 S.Ct. 678, 62 L.Ed.2d 652 (1980).

■ To warrant severance, a defendant must demonstrate clear, manifest, or undue prejudice resulting from joinder. *United States v. Brashier*, 548 F.2d 1315, 1324 (9th Cir.1976), *cert. denied*, 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 565 (1977); *Adams*, 581 F.2d at 198. Merely suggesting, or even demonstrating, a comparative advantage in separate trials, absent a showing of manifest prejudice, does not entitle a coconspirator to severance. *See United States v. Jenkins*, 785 F.2d 1387, 1394 (9th Cir.1986); *United States v. Cella*, 568 F.2d 1266, 1288 (9th Cir.1978); *United States v. Campanale*, 518 F.2d 352, 359 (9th Cir.1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976). The requisite prejudice must be "other than

that which necessarily inheres whenever multiple defendants ... are tried jointly." *Adams*, 581 F.2d at 198.

Appellant claims unfair prejudice is established by the "inconsistency" between his defense and the defense of coconspirator Linn. Assuming, *arguendo*, the inconsistency of the defenses, appellant misstates the applicable law. Severance is required when coconspirators' defenses are mutually exclusive; that is, when acquittal of one defendant necessarily results in conviction of the other, *United States v. Van Cauwenberghe*, 814 F.2d 1329, 1337 (9th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988); *United States v. Ramirez*, 710 F.2d 535, 546 (9th Cir.1983), not when they are merely inconsistent.

Faced with considerable circumstantial evidence, appellant and Linn employed similar defenses, both devoid of any direct evidence. Linn claimed to have met appellant for a legitimate business purpose. Appellant claimed to have solicited money from Linn for a legitimate business purpose, and to have purchased a small quantity of "personal use" cocaine from him. Neither co-conspirator offered direct evidence rebutting the Government's evidence as to the cocaine bricks' source, appellant, or as to the alleged revenue source, Linn. That the coconspirators' defenses may, in part, have been "antagonistic" does not compel severance. Linn's alleged innocence did not require appellant's conviction; appellant's alleged innocence did not compel Linn's conviction. *See Van Cauwenberge*, 814 F.2d at 1337; *Ramirez*, 710 F.2d at 546; *United States v. Haldeman*, 559 F.2d 31, 71 (D.C.Cir.1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

Finally, appellant was afforded the opportunity to argue that he did not use an alias. He argued to the jury that non-use of an alias supported an inference of innocence. That Linn may have employed an alias on which appellant was denied comment, does not establish sufficient prejudice to compel severance.

In any event, the severance motion was tardy. No reference to a motion was made until the Government's opening statement had concluded. Reference to severance occurred on the second day of trial. Since timeliness may be considered by the district court in deciding whether to grant or deny a severance motion, *United States v. Hoelker*, 765 F.2d 1422, 1425 (9th Cir.1985) (per curiam), *cert. denied*, 475 U.S. 1024, 106 S.Ct. 1219, 89 L.Ed.2d 330 (1986); *see also United States v. Bollinger*, 796 F.2d 1394, 1402 (11th Cir.1986); *United States v. Johnson*, 713 F.2d 633, 641 (11th Cir.1983), the denial of severance does not constitute an abuse of discretion.

## V

We have addressed and found constitutional the mandatory minimum sentencing provisions of 21 U.S.C. § 841(b)(1)(B) on facts similar to these. *See United States v. Klein*, 860 F.2d 1489 (9th Cir.1988); *United States v. Savinovich*, 845 F.2d 834 (9th Cir.1988). No further explication is warranted in this case. Appellant received the minimum sentence, five years imprisonment, for a crime punishable by up to forty years imprisonment. His claim is without merit.

## CONCLUSION

Since jury instructions "fairly and adequately" covered the issues presented, the district court did not abuse its discretion in denying appellant's requested instruction. Sufficient evidence exists to sustain appellant's conviction for unlawful use of a communications facility, under 21 U.S.C. § 843(b). Appellant offered the severance motion on the second day of trial and did not, in any event, prove manifest prejudice; thus, denial of severance was not in error. We have previously decided that the mandatory minimum sentencing provisions of 21 U.S.C. § 841(b)(1)(B) are not unconstitutional.

AFFIRMED.