967 F.2d 585
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Niles FOWLER, Petitioner-Appellant,
v.
William HARPER, Director Snohomish County Jail; Chase
Riveland, Secretary, Department of Corrections,
Respondents-Appellees.
 No. 91-35868.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 5, 1992.*
Decided June 15, 1992.
 
 Before EUGENE A. WRIGHT, CANBY and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Niles Fowler appeals the district court's denial of Fowler's petition for habeas corpus. Fowler filed a timely notice of appeal on June 12, 1991 and obtained a certificate of probable cause on June 17, 1991. We have jurisdiction pursuant to 28 U.S.C. section 2253, and we affirm the district court's decision.
 
 BACKGROUND
 
 3
 This case arises out of an apparent burglary that occurred at radio station KBAE in the early morning hours of January 28, 1985 and a subsequent insurance claim. Defendant Niles Fowler had invested $325,000 in the radio station, and by October 1984, he controlled the radio station through an executive committee consisting of Fowler and two smaller stockholders. The station's general manager testified that he viewed Fowler as his employer. Because the station was experiencing financial difficulties, it was unable to obtain credit to purchase new equipment. Thus, Fowler used his personal credit cards to purchase $20,000 worth of new equipment, including two Tascam reel-to-reel tape recorders.
 
 
 4
 In December 1984, Fowler discussed upgrading the station's insurance policy to replacement cost coverage. After obtaining approval from the executive committee, Fowler directed the general manager to obtain the replacement coverage. The new coverage became effective on January 25, 1985. Three days later, the general manager arrived at work to discover that the door had been forced open and that most of the radio equipment had been removed. The general manager submitted an insurance claim for $96,000 ($75,000 for the replacement cost of the equipment and $21,000 for other damages). Although Fowler did not direct or supervise the preparation of this claim or sign it himself, he did notarize the general managers' signature.
 
 
 5
 Shortly thereafter, the station engineer noticed that the tape recorders that replaced the "stolen" Tascams were similar to the "stolen" Tascams. Upon further investigation, it was discovered that the serial numbers had been removed from the replacement Tascams. The insurance company asked Fowler for documents verifying that he purchased the replacement Tascam. Fowler explained that he purchased the replacement Tascams from a friend, Satjiv Chahil. Fowler also produced a letter, purportedly from Chahil, discussing the purchase of the Tascams. However, at trial Chahil testified that he had not purchased any equipment for Fowler and that he had not written any letters about purchasing the equipment.
 
 
 6
 In June 1985, Fowler delivered some radio equipment to another radio station that he partially owned. The station manager at that station had previously worked for KBAE and recognized the equipment as equipment that was "stolen" from KBAE. Fowler claimed that he had found this equipment in a bomb shelter at KBAE where old equipment was sometimes stored. However, the station engineer at KBAE testified that he had inventoried the equipment in the bomb shelter in June 1985 and that the equipment was not in the bomb shelter. Other than his possession of the "stolen" equipment, there was no evidence that Fowler was the person who removed the equipment from the station on January 28, 1985.
 
 
 7
 Fowler was charged with one count of theft by deception, two counts of forgery, and one count of knowingly causing a fraudulent or false insurance claim to be filed. The jury convicted Fowler of all four counts, but his conviction for theft by deception was later overturned by the Washington Court of Appeals. The court of appeals remanded the case for resentencing. Fowler then appealed the decision of the court of appeals, but the Washington Supreme Court denied his petition for review.
 
 
 8
 While awaiting resentencing, Fowler petitioned the United States District Court for the Western District of Washington for a writ of habeas corpus. After submitting Fowler's petition to the United States Magistrate, who determined that Fowler's claims were either unexhausted or meritless, the district court denied Fowler's petition. Fowler appeals the district court's order.
 
 DISCUSSION
 
 9
 Fowler first argues that he was unconstitutionally convicted of having committed a crime with which he was never charged. Although Fowler caused his employees to file a false insurance claim by removing equipment from the radio station, he did not request or supervise the preparation of the claims. Thus, Fowler disingenuously alleges that he was in effect convicted of "theft by taking" when he was never charged with theft by taking. The record simply fails to support this allegation.
 
 
 10
 The prosecution's theory at every stage of this case has been that, by arranging for the removal of equipment from the station, Fowler knowingly caused the filing of a false insurance claim. Fowler staged the "theft" or removal of insured equipment from the station and did nothing as radio station employees filed a claim for the apparently stolen equipment. Meanwhile, Fowler retained the equipment and put it back into use. A jury of Washington citizens and the Washington Court of appeals found that these acts constitute insurance fraud as defined by Washington law. Fowler was properly convicted of that crime, and his arguments are without merit.
 
 
 11
 Fowler's next argument is even more meritless than his first. Fowler argues that his conviction must be vacated for insufficiency of the evidence. He contends that there was no evidence showing Fowler caused the false insurance claims to be filed by removing and retaining equipment from the radio station. He then sets forth facts favorable to his defense in an attempt to cast doubt on the jury verdict. In evaluating this argument, we must review the record as a whole in the light most favorable to the prosecution. United States v. Adler, 879 F.2d 491, 495 (9th Cir.1988).
 
 
 12
 There is sufficient evidence to support a jury verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original)). In this case, Fowler owned a large interest in the radio station. Three days after some of the station's equipment was insured for replacement value, the equipment was apparently stolen in a burglary. Station employees filed an insurance claim for the equipment. Shortly thereafter, the "stolen" equipment was found in the possession of Fowler with the serial numbers removed. Fowler put some of the equipment back into use at the radio station. Fowler also put some of the "stolen" equipment to use in another radio station he owned. When questioned about how he obtained this equipment, Fowler gave several false explanations. Given this evidence, a rational jury could find that Fowler knowingly caused false insurance claims to be filed by staging a mock burglary.
 
 
 13
 Fowler's final frivolous argument is that territorial jurisdiction is an element of the crime of knowingly causing a fraudulent insurance claim. Fowler cites our decision in United States v. Gipe, 672 F.2d 777, 779 (9th Cir.1982), for the proposition that territorial jurisdiction must be an element of every crime. This reading of Gipe is disingenuous at best. It is clear that territorial jurisdiction was an element of the crime in Gipe "[b]ecause possession of intoxicants is prohibited by § 1156 only in Indian country." Id. Indeed, in most instances, jurisdiction is a question of law to be determined by the court. Gipe carved out a narrow exception to this general rule when a statute makes certain conduct a crime only in a certain area.
 
 
 14
 In any event, jurisdiction is not an element of crimes in Washington. The Washington Court of Appeals ruled in this case that issues of jurisdiction need not be submitted to the jury unless the underlying facts are in dispute. Because there was no dispute concerning jurisdictional facts in this case, the Washington courts acted properly in deciding that they had jurisdiction as a matter of law. The State of Washington, and not this court, has the power to make jurisdiction an element of a crime. Fowler has failed to show that Washington has taken that step. See Engle v. Isaac, 456 U.S. 107, 120 (1982) (absent "concrete evidence" that the state has made some circumstance an element of the crime, federal courts should decline to accept a construction of state law that makes the circumstance an element).
 
 CONCLUSION
 
 15
 Like the federal magistrate and district court before us, we find that the "petitioner's claims have no merit." Therefore, we AFFIRM the decision of the district court.
 
 
 16
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3