## MATTER OF GAGLIOTI

### In DEPORTATION Proceedings

### A-5064270

*Decided by Board September 11, 1964*

Conviction of conspiracy to commit an unlawful act (establish gambling games) in violation of 18 Pennsylvania Statutes 4302 is not a conviction of a crime involving moral turpitude.

CHARGES:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4) (1958)]—Convicted of two crimes after entry—conspiracy to violate Internal Revenue Laws; conspiracy to establish gaming devices.

This is an appeal by the trial attorney from the order of the special inquiry officer terminating proceedings. The sole question presented on this appeal is whether respondent's conviction for conspiracy to establish gaming devices involves moral turpitude. We agree with the special inquiry officer that moral turpitude is not involved and will dismiss the appeal.

Respondent, a 60-year-old married male, a native and citizen of Italy, last entered the United States in 1921. The gaming conviction in question occurred on January 16, 1941, when he was convicted of conspiracy in the Court of Quarter Sessions for Delaware County, Pennsylvania under 18 P.S. 4302[1] for "unlawfully, falsely, fraudulently, wilfully and maliciously" conspiring to "commit an unlawful act." The specifications of the unlawful act are in brief: to establish gambling games, to permit people to collect for the purpose of gambling, to solicit people to visit the gambling room, and to exhibit gaming devices.

[1] 18 P.S. 4302. Conspiracy to do unlawful act. Any two or more persons who falsely and maliciously conspire and agree to cheat and defraud any person of his moneys, goods, chattels, or other property, or do any other dishonest, malicious, or unlawful act to the prejudice of another, are guilty of conspiracy, a misdemeanor, and on conviction, shall be sentenced to pay a fine not exceeding five hundred dollars ($500), or to undergo imprisonment, by separate or solitary confinement at labor or by simple imprisonment, not exceeding two (2) years, or both. 1939, June 24, P.L. 872, Section 302.

These specifications are all included within the crime of establishing a gambling place under 18 P.S. 4605 [2] for which respondent was indicted and convicted on the same day as he was for the conspiracy charge; however, as the special inquiry officer has pointed out, there is a specific law relating to enticing persons to gamble (18 P.S. 4606) and there is also the possibility that the specifications describe in part the crime of pool-selling and bookmaking set forth in 18 P.S. 4607. The special inquiry officer, after examination of the cases, ruled that none of the substantive crimes mentioned involved moral turpitude because no proof of an evil intent or malice is required for conviction. He then applied the immigration rule that a conviction for conspiracy does not involve moral turpitude unless the substantive crime does, and terminated proceedings. The trial attorney contends the conviction involves moral turpitude because the indictment charges a fraudulent and malicious intent and the use of fraudulent and malicious means.

It is settled in the immigration laws that the moral turpitude of a conviction for conspiracy depends upon whether the substantive crime involves moral turpitude. *Matter of B—*, 6 I. & N. Dec. 98, 105–7. We see no reason to depart from this rule. Violations of gaming laws do not ordinarily involve moral turpitude.

Concerning a lottery policy violation (New York Penal Code, article 88, section 974) the Board stated in *Matter of Garcia*, 56040/601, March 21, 1941, with the approval of the then Attorney General:

* * * Gaming is not an offense eo nomine. It was not in itself a crime at common law unless conducted in so open a manner as to constitute a public nuisance. It is true that certain offenses, solely of a statutory class, may,

---

[2] 18 P.S. 4605. Establishing gambling places. Whoever sets up or establishes, or causes to be set up or established, any game or device of address, or hazard, at which money or other valuable thing may or shall be played for, or staked or betted upon; or procures, permits, suffers and allows persons to collect and assemble for the purpose of playing at, and staking or betting upon such game or device of address, or hazard, for money or other valuable thing; or whoever, being the owner, tenant, lessee or occupant of any premises, leases, hires, or rents the same, or any part thereof, to be used and occupied, or employed for the purpose of playing at, or staking and betting upon such game or device of address, or hazard, for money or other valuable thing, is guilty of a misdemeanor, and on conviction, shall be sentenced to pay a fine not exceeding five hundred dollars ($500), or undergo imprisonment not exceeding one (1) year, or both.

The owner of such premises who shall have knowledge that any such game or device of address, or hazard, has been set up in or upon the said premises, and shall not forthwith cause complaint to be made against the person who has set up or established the same, shall be deemed to have knowingly leased, hired or rented the said premises for the said purposes.

This section shall not be construed to apply to games of recreation and exercise, such as billiards, bagatelle, ten pins, etc., where no betting is allowed. 1939, June 24, P.L. 872, section 605.

nevertheless, carry therewith the element of moral turpitude, but, in those instances, we find an element which is contrary to public morals, such as fraud or like ingredients malum in se. There are apparently no judicial determinations on the exact point, namely, whether gambling, in violation of a statute prohibiting it, is a crime involving moral turpitude. The standard by which a misdemeanor, such as gambling, is to be judged, therefore, is that prevailing in the United States as a whole, regarding the common view of our people concerning its moral character.

We find that licensed gambling in connection with horse racing is permitted in Kentucky, Illinois, Maryland, Nevada and possibly other States. People have a legal right to gamble until the Legislature specifically decrees otherwise and such right cannot be restricted to special forms or certain classes of people (People v. Revolta (1937) 295 N.Y.S. 102).

The words "involving moral turpitude", as long used in the law with reference to crimes, refer to conduct which is inherently base, vile or depraved, contrary to accepted rules of morality, whether it is or is not punishable as a crime. They do not refer to conduct which, before it was made punishable as a crime, was not generally regarded as morally wrong or corrupt, as offensive to the moral sense as ordinarily developed.

Applying the reasoning of *Matter of Garcia, supra,* we find that the substantive crime or crimes involved in the gambling conspiracy charge do not involve moral turpitude (see *United States* v. *Carrollo,* 30 F. Supp. 3, W.D. Mo. (1939) and *Commonwealth* v. *Mittleman,* 36 A. 2d 860, 865 (1944). It follows that the conspiracy charge does not involve moral turpitude.

Moreover, even if the rule in conspiracy cases were otherwise than it is, the trial attorney's appeal would have to be dismissed because the gambling conspiracy statute does not require an evil intent. Respondent was convicted under that portion of the conspiracy statute, prohibiting the conspiracy to do an unlawful act. The corrupt motive or criminal intent required for such a conviction is present when the conspirators knowingly agree to commit the unlawful act—a fraudulent intent is not necessary (*Commonwealth* v. *Mittleman, supra*). The appeal will be dismissed.

ORDER: It is ordered that the appeal be and the same is hereby dismissed.