UNITED STATES of America,
Plaintiff–Appellee,

v.

CHU KONG YIN, aka Alfred Chu,
Defendant–Appellant.

No. 89–10408.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 14, 1990.

Decided June 3, 1991.

---

**1.** The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern and Western Districts of Missouri.

Spencer W. Strellis, and William P. Cole, Krech & Cole, Oakland, Cal., for defendant-appellant.

Diane B. de Forest, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before WALLACE, Chief Judge, ALARCON and WIGGINS, Circuit Judges.

ALARCON, Circuit Judge:

Chu Kong Yin (Chu) appeals from his conviction and sentence of fifteen years imprisonment for making false statements on an Application for Status as Permanent Resident in violation of 18 U.S.C. §§ 1001 and 1546. Chu raises four arguments on appeal: (1) the district court erred in concluding that certain public documents from Hong Kong were properly authenticated; (2) the district court admitted documents containing inadmissible hearsay; (3) the jury's verdict against Chu was not supported by substantial evidence; and (4) the district court's sentence of fifteen years'

imprisonment constitutes cruel and unusual punishment in violation of the eighth amendment. We reverse in part and reverse and remand in part.

## STATEMENT OF THE CASE

Chu filed an Application for Status as Permanent Resident on July 20, 1983. On the form issued by the Immigration and Naturalization Service (INS), Chu responded to the question "I list below all organizations, societies, clubs, and associations, past or present, in which I have held membership...." with the word "None." In response to the question "I have/have not been arrested, convicted or confined in a prison," Chu checked the box next to "have not." In response to the question "Aliens who have committed or who have been convicted of a crime involving moral turpitude [are not admissible].... Do any of the foregoing classes apply to you?", Chu checked the box next to "No." Chu was admitted to the United States as a permanent resident alien.

On September 20, 1988, a six-count indictment was filed against Chu in the district court. The indictment charged Chu with three counts of making false statements within the jurisdiction of a department of the United States Government in violation of 18 U.S.C. § 1001, and with three counts of making a false statement under oath with regard to a material fact in an application required by the immigration laws in violation of 18 U.S.C. § 1546. The indictment charged that Chu knew, when filling out the form, that he had been convicted of the following crimes: membership in an illegal triad society, larceny by finding, carnal knowledge of a girl between 13 and 16, criminal intimidation, and gambling. The indictment thus charged Chu with two counts of making a false statement when he stated that he had been a member of no organizations or societies (counts one and four), with two counts of making a false statement when he stated that he had not been convicted of a crime (counts two and five), and with two counts of making a false statement when he stated that he had not been convicted of a

crime involving moral turpitude (counts three and six). On October 19, 1988, Chu entered a plea of not guilty to all six counts.

On December 1, 1988, Chu filed a motion in limine requesting a court order preventing the government from introducing documents from Hong Kong entitled "Certificate of Trial," which contained the following entries:

(1) On August 10, 1966, Chu Ping–Yin was conditionally discharged after an arrest for larceny by finding;

(2) On March 23, 1968, Chu Kwing–Yin was conditionally discharged after an arrest for carnal knowledge of a girl between 13 and 16 years;

(3) On February 6, 1974, Chu Kwong–Yin was convicted of membership in a triad society and given a sentence of six months, suspended for two years;

(4) On March 4, 1974, Chu Kwong–Yin was convicted of three counts of criminal intimidation, fined $1500 HK, and ordered to pay $2000 HK in compensation;

(5) On July 27, 1981, Chu Kong–Yin was convicted of gambling in a gambling establishment and fined $350 HK.

These documents were later admitted into evidence as Exhibits 2 and 3. Chu alleged in this motion that he was not the person named in the Hong Kong records. Chu argued in his brief in support of the motion in limine that the Hong Kong records were improperly authenticated and contained inadmissible hearsay. Judge John P. Vukasin denied the motion without prejudice. On January 12, 1989, Judge Vukasin denied the government's motion for a continuance and transferred the matter to Judge Samuel Conti for a jury trial to commence on January 19, 1989.

On January 19, 1989, Chu filed a second motion in limine seeking an order that would preclude the government from introducing into evidence certain writing contained on a fingerprint exemplar that listed alleged prior convictions in a section labelled "Remarks." Chu's fingerprints were placed on the exemplar after he was arrested for gambling in 1981. The fingerprint exemplar was later admitted into evidence as Exhibit 4. After listening to defense counsel's oral argument, the court initially commented that the remarks section on the fingerprint exemplar "could be excised, so far as that goes." The court then asked the prosecutor how she was going to prove that the defendant was the person described in the documents listing various convictions. The prosecutor replied that she would rely on the notations in the "Remarks" section of the 1981 fingerprint card. The court examined the exhibits and noted that the identification numbers in the "Remarks" section on the fingerprint exemplar did not match those in the documents listing the prior convictions. The court stated, "I don't see where you've got the nexus between those records and this gentleman here." The court then continued the case until March 31 upon the government's motion for a "further evidentiary hearing on this matter."

On March 24, 1989, the government filed an additional evidentiary submission. This submission contained the following offer of proof of the alleged prior convictions:

A declaration by John Gilbert Hawkesley, Chief Inspector of Police, Royal Hong Kong Police Force, identifying defendant by photograph as the person he arrested and charged with illegal gambling in 1981;

A declaration by David William Holloway, Superintendent of Police, Royal Hong Kong Police Force, explaining an attached "criminal record" that listed the convictions contained in the 1988 "Certificates of Trial" and also listed alleged aliases used by Chu;

A declaration by Fok Hing–Keung, Detective Chief Inspector, Royal Hong Kong Police Force, explaining the coding on Hong Kong's fingerprint record made at the time of the 1981 gambling arrest; and,

A letter from Y.C. Leung, First Clerk of the Central Magistracy, Royal Crown Colony of Hong Kong, explaining some of the coding on the 1988 certificates of trial.

Officer Holloway's declaration and accompanying criminal record were later admitted into evidence as Exhibit 5.

At the hearing on March 31, 1989, defense counsel stated that he "had not had the opportunity to address the addi[ ]tion[al] evidence that was filed on the 24th of March," having only received it the day before. Judge Conti stated, "Well, I have reviewed it myself, and from what I reviewed I am going to deny your motions." Judge Conti then stated that he would allow defense counsel to renew his motions prior to trial, and set a trial date of May 11.

On May 11, 1989, Chu filed a third motion in limine requesting an order preventing the government from introducing the exhibits submitted to the court on March 24. Chu sought to suppress admission of the following exhibits:

Exhibit 2—A "Certificate of Trial" from Hong Kong prepared in 1988, listing charges of carnal knowledge in 1968 and gambling in 1981 (apostille dated March 21, 1988);

Exhibit 3—A "Certificate of Trial" from Hong Kong prepared in 1988, listing charges of criminal intimidation in 1974, membership in a triad society in 1974, and larceny by finding in 1966 (apostille dated September 12, 1988)

Exhibit 4—A Hong Kong fingerprint exemplar executed after Chu's arrest for gambling in 1981 with "Remarks" section listing alleged prior convictions from 1966 to 1974;

Exhibit 5—A declaration made under penalty of perjury by Officer D.W. Holloway with attached "Criminal Record" prepared in 1989, listing prior crimes and aliases.

In his motion, Chu renewed the objections set forth in his prior motions and, in addition, argued that the documents were not relevant because they did not contain facts relating to him. The district court denied Chu's motion.

On May 12, 1989, a jury found Chu guilty of all six counts. Chu's motion for a judgment of acquittal on the ground that the evidence was insufficient was denied. The court sentenced Chu to a term of five years' imprisonment on counts one through three, with the sentences to be served consecutively, and imposed fines totalling $15,000. Imposition of sentence was suspended on counts four through six. Chu timely appealed.

## STANDARD OF REVIEW

■ In *United States v. Owens*, we set forth the standard of review applicable to our analysis of evidentiary issues:

The district court's construction of the Federal Rules of Evidence is a question of law subject to *de novo* review. Questions of the admissibility of evidence which involve factual determinations, rather than questions of law, are reviewed for an abuse of discretion. When a mixed question of law and fact is presented, the standard of review turns on whether factual matters or legal matters predominate. If an "essentially factual" inquiry is present, or if the exercise of the district court's discretion is determinative, then we give deference to the decision of the district court; otherwise, we conduct a *de novo* review.

*United States v. Owens*, 789 F.2d 750, 753 (9th Cir.1986) (citations omitted), *rev'd on other grounds*, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). A nonconstitutional evidentiary error will be reversed for an abuse of discretion only if the court's ruling more likely than not affected the verdict. *United States v. Emmert*, 829 F.2d 805, 808 (9th Cir.1987).

## DISCUSSION

I. *Authenticity of the Hong Kong Records*

■ Chu argues that the records contained in Exhibits 2, 3, 4 and 5 were not properly authenticated. "The standard of review of a district court's decision regarding authenticity of evidence is the abuse of discretion standard." *United States v. Perlmuter*, 693 F.2d 1290, 1292 (9th Cir. 1982). Under the Federal Rules of Evidence, documents may provide their own authentication or the necessary foundation may be established by extrinsic evidence. Under Rule 902(3), foreign documents are self-authenticating if

executed or attested in an official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, *and accompanied by a final certification* as to the genuineness of the signature and official position (A) of the executing or attesting person, or (B) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation in a chain of certificates of genuineness of signature and official position relating to the execution or attestation.... If reasonable opportunity had been given to all parties to investigate the authenticity and accuracy of official documents, the court may, for good cause shown, order that they be treated as presumptively authentic without final certification ...

Fed.R.Evid. 902(3) (emphasis added). The government complied with the execution and attestation requirements, but provided no final certification for Exhibits 2, 3, 4, and 5. We need not determine whether the government demonstrated good cause for its failure to obtain a final certification, because we find that the government satisfied the requirement of Rule 901.

Under Rule 901, documents may also be authenticated by extrinsic evidence. Rule 901 provides:

**Rule 901. Requirement of Authentication or Identification**

**(a) General provision.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

**(b) Illustrations.** By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

**(1) Testimony of witness with knowledge.** Testimony that a matter is what it is claimed to be.

....

**(4) Distinctive characteristics and the like.** Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

....

**(7) Public records or reports.** Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept.

Fed.R.Evid. 901.

The government's exhibits satisfied the requirements of Rule 901. At trial, Chief Inspector Hawkesley of the Hong Kong police testified that Exhibit 4 was a copy of a Hong Kong fingerprint exemplar and a record of prior convictions that had been filled out under his supervision. At trial, INS Agent Karl Yee testified that he requested and received Exhibits 2 and 3 by mail through the INS legate in Hong Kong, and that he received Exhibit 5 by mail as a result of direct communication with the Hong Kong Police. By itself, Agent Yee's testimony would be insufficient extrinsic evidence to demonstrate authenticity. *See Perlmuter*, 693 F.2d at 1293 (testimony of an INS agent was not "sufficient to support a finding that the matter in question is what the proponent claims" (quoting Fed. R.Evid. 901(a)). Agent Yee's testimony, however, was supported by other evidence.

Exhibits 2, 3, 4, and 5 bear the certification of the Supreme Court of Hong Kong and an apostille of certification, as required by the Hague Convention, *see* Fed.R.Civ.P. 44 that verifies the signature of the Hong Kong Commissioner of Oaths, who administered an oath to the Hong Kong INS agent who obtained the documents. The Hong Kong INS agent signed a statement that Exhibits 2 and 3 are public records; Exhibit 4 and the criminal record in Exhibit 5 were identified as public records by the testimony of Chief Inspector Hawkesley and by the declaration of Officer Holloway that was part of Exhibit 5. Finally, all four exhibits are supported by "a written declaration made and signed in a foreign country by the custodian of a foreign record of regularly conducted activity or

another qualified person." This declaration is sufficient to establish authenticity pursuant to 18 U.S.C. § 3505. 18 U.S.C. § 3505(a)(2), (c)(2) (1988).

"FRE 901(a) requires that the government make only a prima facie showing of authenticity " 'so that a reasonable juror could find in favor of authenticity or identification.' " ' " *United States v. Blackwood,* 878 F.2d 1200, 1202 (9th Cir.1989) (per curiam) (quoting *United States v. Black,* 767 F.2d 1334, 1342 (9th Cir.) (quoting 5 J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 901(a)[01], at 901–16 to –17 (1983)), *cert. denied,* 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 557 (1985)). "Once the government meets this burden 'the probative force of the evidence offered is, ultimately, an issue for the jury.' " *Id.* (quoting *Black,* 767 F.2d at 1342). The testimony of Agent Yee and Chief Inspector Hawkesley, when viewed in combination with the various certifications and declarations, is sufficient to support a finding that the records are authentic. *Compare Blackwood,* 878 F.2d at 1202 (IRS agent's personal knowledge about the recording and filing procedures used by the IRS in processing and filing returns was sufficient to establish returns as authentic) *with Perlmuter,* 693 F.2d at 1292–93 (INS agent's testimony regarding his request and receipt of a document purporting to list four prior Israeli convictions, by itself, was not sufficient under Rule 901(a)).

Because we find that the government introduced sufficient extrinsic evidence of authenticity to satisfy Rule 901(a), we need not determine whether the government's exhibits were self-authenticating under Rule 902.

## II. *Hearsay*

Chu argues that, even if the government's exhibits are authentic foreign public documents, these papers contain inadmissible hearsay. Specifically, Chu argues that the references to his alleged pre–1981 convictions in the 1988 "Certificates of Trial" included in Exhibits 2 and 3, the "Remarks" section of Exhibit 4, and in Officer Holloway's declaration and accompanying "Criminal Record" are inadmissible hearsay.

■ The government's exhibits fall within the classic definition of hearsay, for they contain information as to which "[t]he declarant is not present and thus cannot be cross-examined." *NLRB v. First Termite Control Co.,* 646 F.2d 424, 426 (9th Cir. 1981). As the Supreme Court has noted:

> [W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980) (footnote omitted). The trial court's decision to admit evidence over hearsay objections is reviewed under an abuse of discretion standard. *Perlmuter,* 693 F.2d at 1293.

■ The government argues that, because Hong Kong produced the 1988 "Certificates of Trial" (Exhibits 2 and 3) and the 1989 criminal record (Exhibit 5) when asked for proof of past convictions, these documents should be viewed as the means by which Hong Kong records past convictions and were therefore admissible at trial. In essence, the government would have us hold that the confrontation clause does not apply to documents produced by a foreign state. We cannot accept the government's argument. The admissibility of evidence in a United States district court is controlled by governing constitutional principles and the Federal Rules of Evidence. *See* Rule 101 ("These rules govern proceedings in the courts of the United States....") We cannot apply the rules of evidence that may be applicable in foreign nations. Assuming arguendo that Hong Kong officials do not compile contemporaneous records of criminal judgments, a proposition for which the government offers no evidentiary or legal

support, public documents prepared by Hong Kong officials, when offered into evidence in the courts of the United States, are subject to the requirements of the sixth amendment's confrontation clause: they must "fall[ ] within a firmly rooted hearsay exception" or demonstrate "particularized guarantees of trustworthiness." *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539.

The district court did not identify which firmly rooted hearsay exception or what particularized guarantees of trustworthiness supported the admissibility of the hearsay statements in the Hong Kong records. At the hearing on Chu's motion, the following exchange occurred:

THE COURT: WELL, HAS THE DOCUMENT BEEN AUTHENTICATED?

MS. DE FOREST: YES, IT HAS, YOUR HONOR. IT WAS INDEPENDENTLY AUTHENTICATED BY APOSTILLE PER THE GENEVA CONVENTION. IT'S AN OFFICIAL RECORD OF THE—OF THE HONG KONG POLICE.

MR. CHING: IT'S STILL HEARSAY, YOUR HONOR.

THE COURT: WELL, A LOT OF THINGS ARE HEARSAY. JUST BECAUSE IT'S HEARSAY DOESN'T MEAN IT'S INADMISSIBLE. JUST BECAUSE IT'S HEARSAY DOESN'T MEAN IT'S INADMISSIBLE.

MR. CHING: WELL, IT'S—

THE COURT: THERE'S SUCH A THING AS ADMISSIBLE HEARSAY, YOU KNOW. THIS IS ONE OF THEM. HAVE YOU GOT ANYTHING ELSE?

MR. CHING: IS IT ADMISSIBLE—HOW IS IT—

THE COURT: I JUST SAID IT'S ADMISSIBLE. THAT'S HOW IT'S ADMISSIBLE. NOW GET ON TO SOMETHING ELSE. IF YOU WANT TO ARGUE, YOU CAN ARGUE TO THE NINTH CIRCUIT.

MR. CHING: I SEE. IN ADDITION TO THAT, YOUR HONOR, IN THE REMARKS SECTION OF GOVERNMENT'S EXHIBIT [4] IT CONTAINS HEARSAY STATEMENTS.

THE COURT: FINE. WE'VE JUST GONE THROUGH THAT. THAT DOCUMENT IS ADMISSIBLE. YOU CAN ARGUE THAT TO THE JURY. YOU CAN'T ARGUE THE HEARSAY, BUT YOU CAN ARGUE WHAT YOU THINK IS WRONG WITH THE EXHIBIT.

MR. CHING: YOUR HONOR, THE LAST TIME WE—WE DISCUSSED THIS MOTION, YOU HAD INDICATED THAT IF THIS DOCUMENT WAS TO BE ENTERED THAT THE HEARSAY—THE PREJUDICIAL HEARSAY THAT'S CONTAINED IN THE REMARKS SECTION, WHICH WERE ADDED ON AFTER—

THE COURT: COUNSEL, DIDN'T YOU JUST HEAR ME? I WANT TO GET ON WITH THIS CASE. IT'S ADMISSIBLE. PERIOD.

It would appear from this colloquy that the district court believed proof of authenticity of document was sufficient, standing alone, to permit the admission of hearsay.

*A. Rule 803 Exceptions*

The government argues before this court that the statements in Exhibits 2, 3, 4, and 5 are admissible pursuant to three exceptions to the hearsay rule. The government relies on the following provisions of the Federal Rules of Evidence:

**Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial**

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

**(6) Records of regularly conducted activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

. . . .

(8) **Public records and reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

. . . .

(24) **Other exceptions.** A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Fed.R.Evid. 803. We discuss the applicability of these exceptions under separate subheadings.

1. *Records of Regularly Conducted Activity.*

■ Records of regularly conducted activity are admissible if they are "made at or near the time by, or from information transmitted by, a person with knowledge." Fed.R.Evid. 803(6). The "certificates of trial" included in Exhibits 2 and 3 were prepared in 1988. They contain no indication that the magistrate's clerk who prepared them was a percipient witness to the facts set forth therein, or that he recorded information transmitted to him by a person with first-hand knowledge of Chu's alleged prior convictions. Chu made timely hearsay objections to their introduction into evidence, at trial or in motions in limine. *Palmerin v. City of Riverside,* 794 F.2d 1409, 1413 (9th Cir.1986) (A motion in limine is sufficient to preserve the objection where the substance of the objection has been "thoroughly explored" and the ruling admitting the evidence is "explicit and definitive."). No showing was made by the government, in response to these objections, that these summaries of prior convictions were "kept in the course of a regularly conducted business activity" as part of "the regular practice of that business activity." *Id.* Indeed, the declarations attached to Exhibits 2 and 3 indicate that the documents were prepared at the request of the INS.

Exhibit 5 suffers from similar foundational flaws. The criminal record appended to Officer Holloway's 1989 declaration is undated. Although Officer Holloway witnessed the gambling conviction, no showing was made at trial that either he or the preparer of the criminal record portion of Exhibit 5 were percipient witnesses to the facts concerning the other alleged convictions. Officer Holloway testified that he joined the Hong Kong police force on September 6, 1974; thus, he was not a police officer at the time of any of the other alleged crimes. Officer Holloway, therefore, could not have been a percipient witness to these crimes and the government has offered no evidence to prove that the criminal record was "made at or near the time, by, or from information transmitted by a person with knowledge" of the facts alleged therein. The government, thus,

failed to prove that either the declaration or the criminal record falls within this exception to the hearsay rule.

The "Remarks" section of Exhibit 4 does not contain any indication that the person who made the entries had first-hand knowledge of the facts set forth or that the entries were made at the time of the convictions. The "Remarks" section is a summary of alleged convictions from 1966 to 1974 written on a 1981 document. Chief Inspector Hawkesley testified that the "Remarks" section is a "space for further remarks by other police officers at headquarters to be included at a later date." The government did not present any evidence regarding the identity of the person who prepared the "Remarks" section or the date the entry was made. Like Exhibits 2, 3, and 5, the "Remarks" section of Exhibit 4 does not meet the percipiency or contemporaneous recording requirements of Rule 803(6). For these reasons, the government's exhibits do not satisfy the business records exception to the hearsay rule.

### 2. *Public Records and Reports.*

■ Rule 803(8) authorizes the admission into evidence, to prove the truth of the matter asserted, of records of the activities of a public office or agency, or of facts observed and reported pursuant to a duty imposed by law. "The mere fact that a document qualifies as a public record, however, does not ipso facto overcome the hearsay objection unless the document relates to an event to which the author could himself testify. This is for the reason that the public documents exception to the hearsay rule is only the substitute for the appearance of the public official who made the record." *Yaich v. United States*, 283 F.2d 613, 616 (9th Cir.1960).

In *Perlmuter*, we held that 803(8) did not apply to an Interpol "rap sheet" listing prior convictions. The court noted:

> Because *there is no indication that Herstig, the person who signed the conviction report (Exhibit 4) and the identification form (Exhibit 3), had first hand knowledge of the convictions* and because of the probability of multiple

levels of hearsay in this situation, Exhibit 4 does not fit within Rule 803(8). It is apparent that Herstig, who signed the conviction report, did not act on the basis of first hand knowledge since the alleged convictions had occurred from 17 to 26 years earlier in a variety of different courts. Since there is no countervailing evidence that suggests that Herstig did possess first hand knowledge, the evidence cannot be admitted.

> In addition, *there is no evidence of any duty on the part of Herstig or anyone else to record this information.* It may have been prepared just for the INS request and not as part of any duty to record day to day. This is another factor preventing us from finding the 803(8) exception helpful to the Government here.

693 F.2d at 1293–94 (citations omitted) (footnotes omitted) (emphasis added).

Rule 803(8) is inapplicable because the government offered no evidence demonstrating that Exhibits 2, 3, the "Remarks" section of Exhibit 4, or the criminal record portion of exhibit 5 were prepared or signed by persons with first-hand knowledge of Chu's alleged prior convictions. The declaration portion of exhibit 5 presents different questions, as it arguably could be admissible under Rule 803(8) as explanatory of the criminal record. Because we hold, however, that the criminal record should not have been admitted, the declaration is irrelevant evidence and therefore inadmissible. *See* Fed.R.Evid. 402.

### 3. *The Residual Exception.*

■ Finally, the government argues that, because its exhibits are more probative than any other evidence it could produce, they are admissible under the residual hearsay exception. The government contends that the fingerprints of the defendants arrested for the pre–1981 offenses were missing from police files, and that all the officers witnessing the pre–1981 arrests are no longer with the Hong Kong police.

The residual hearsay exception does not apply to the government's exhibits in this

case. First, the district court did not make specific findings regarding the requisite elements of Rule 803(24), as required by the law of this circuit. *See, e.g., Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1552 (9th Cir.1990) ("Pursuant to Rule 803(24), the district court must make specific findings regarding the requisite elements of the exception.") Second, "[t]here is nothing indicating that [any of the exhibits], when compared to [items admissible under the] other hearsay exceptions, has 'equivalent circumstantial guarantees of trustworthiness.'" *Perlmuter*, 693 F.2d at 1294 (quoting Fed.R.Evid. 803(24)). The exhibits are not trustworthy for the same reason that the other hearsay exceptions do not apply: there is no evidence that the exhibits were prepared by persons with first-hand knowledge of the pre–1981 convictions or were contemporaneous recordings of those events. "[T]here is nothing in the record to indicate that through reasonable efforts the government could not procure more probative evidence such as the actual judgments of conviction." *Id.* Furthermore, it is not clear that the interests of justice were served by admission of the evidence, because the government has not provided any evidence that Chu is the person referred to in the reports of any of the alleged pre–1981 crimes. Finally, the record does not reveal the identity of the declarants of the various hearsay statements in the government's exhibits, nor does it demonstrate that the government made the names and addresses of these declarants available to Chu in advance of trial. *See Fong v. American Airlines, Inc.*, 626 F.2d 759, 763 n. 3 (9th Cir.1980) ("The proponent of the evidence must give the adverse party the notice specified within the rule."). For the above reasons, the government's exhibits do not meet the requirements of the residual hearsay exception.

### B. *Other Bases for Admission*

■ The government also argues that the evidence of pre–1981 convictions was admissible under 18 U.S.C. § 3505. Section 3505 provides in part:

### § 3505. Foreign records of regularly conducted activity

(a)(1) In a criminal proceeding in a court of the United States, a foreign record of regularly conducted activity, or a copy of such record, shall not be excluded as evidence by the hearsay rule if a foreign certification attests that—

(A) such record was made, at or near the time of the occurrence of the matters set forth, by (or fro information transmitted by) a person with knowledge of those matters;

(B) such record was kept in the course of a regularly conducted business activity;

(C) the business activity made such a record as a regular practice; and

(D) if such record is not the original, such record is a duplicate of the original;

unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

18 U.S.C. § 3505(a)(1) (1988). Section 3505 does not apply to the hearsay portions of the exhibits in this matter. None of the documents at issue was made "at or near the time of the occurrence of" the convictions that occurred in 1966, 1968, and 1974.

The government also contends that because its exhibits were authenticated, the information they contain was automatically admissible. The government cites no authority for the proposition that hearsay within any authenticated document is automatically admissible. This argument confuses discrete foundational requirements for the admission of a writing; a document may be authentic, but still contain inadmissible hearsay.

■ For the reasons set forth above, the evidence of the alleged convictions that took place between 1966 and 1974 was improperly admitted. The portions of the exhibits that the government sought to use as proof of these convictions did not meet the requirements of 18 U.S.C. § 3505. The government also failed to make a proper showing that the facts set forth in these exhibits are admissible under the Federal Rules of Evidence. The use of this evi-

dence to prove the alleged pre–1981 convictions violated the confrontation clause.

"Where there is a reasonable possibility that the admission of evidence in violation of the Confrontation Clause might have contributed to a conviction, the government has the burden of persuading an appellate court beyond a reasonable doubt that such error was harmless." *United States v. Ordonez*, 737 F.2d 793, 806 (9th Cir.1984); *see also Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972) (erroneous admission of evidence requires a reversal of convictions whenever "there is a reasonable possibility that the improperly admitted evidence contributed to the conviction"); *United States v. Goldberg*, 582 F.2d 483, 489 (9th Cir.1978) (same), *cert. denied*, 440 U.S. 973, 99 S.Ct. 1538, 59 L.Ed.2d 790 (1979). At trial, the erroneously admitted evidence was the only proof of the charges of larceny by finding, carnal knowledge, criminal intimidation, and membership in a triad society. Thus, there is no admissible evidence to support the conclusion that Chu lied when he said he had never been convicted of a crime of moral turpitude (counts three and six) and that he had never been a member of an illegal society (counts one and four). Accordingly, we can not find that the erroneous admission of this evidence was harmless beyond a reasonable doubt as to these counts. We must reverse Chu's convictions on counts one, three, four, and six.

Similarly, we can not say beyond a reasonable doubt that the admission of this evidence was harmless in regard to counts two and five. At trial, the Government contended that Chu had lied on his application in regard to whether he had ever been convicted of a crime. It contended that his alleged previous convictions for larceny, criminal intimidation, carnal knowledge, and gambling were each sufficient to prove this allegation. The inadmissible evidence was the only evidence offered to support the first three convictions. The Government did prove, even without considering the inadmissible evidence, that Chu was convicted of gambling in a gaming establishment. But we can not, beyond a reasonable doubt, be assured from this record

that the jury relied on the gambling conviction, rather than one of the other convictions which was proved solely based on inadmissible evidence, in reaching its verdict on counts two and five. Therefore, since the erroneously admitted evidence of the convictions for larceny, criminal intimidation, or carnal knowledge may have been the basis for the jury's verdict regarding two counts two and five, those counts must also be reversed.

### III. *Double Jeopardy*

██ Chu argues that, because there was insufficient evidence to support his conviction on counts one, three, four, and six, the double jeopardy clause bars retrial on those counts. The Supreme Court has held that the double jeopardy clause bars retrial "for the defendant who obtains an appellate determination that the trial court *should* have entered a judgment of acquittal" based on insufficiency of the evidence. *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 290, 102 L.Ed.2d 265 (1988) (citing *Burks v. United States*, 437 U.S. 1, 10–11, 98 S.Ct. 2141, 2146–47, 57 L.Ed.2d 1 (1978)). The double jeopardy clause does not bar retrial after a reversal based on the erroneous admission of evidence if the erroneously admitted evidence supported the conviction. *Id.* 109 S.Ct. at 290–91. There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Adler*, 879 F.2d 491, 495 (9th Cir.1988) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)) (emphasis in *Jackson* ). A court must draw all reasonable inferences from the evidence that support the conviction. *United States v. Arriaga–Segura*, 743 F.2d 1434, 1435 (9th Cir.1984).

### A. *Counts One and Four: Membership in an Illegal Society*

██ The only proof offered to support Chu's conviction on counts one and four was evidence that a person named Chu

Kwong Yin was convicted in 1974 of a violation of Hong Kong Laws, chapter 151, § 20(2). This statute provides:

> Any person who is or acts as a member of a triad society or professes or claims to be a member of a triad society or attends a meeting of a triad society or is found in possession of or has the custody or control of any books, accounts, writing, lists of members, seals, banners or insignia of or relating to any triad society or to any branch of a triad society whether or not such society or branch is established in Hong Kong, shall be guilty of an offence....

Hong Kong Laws, ch. 151 § 20(2). The government argues that the jury could properly have concluded that the conviction under this statute was evidence of Chu's membership in a triad society. This is a misstatement of law. Determining what facts were essential to a prior judgment is a matter for the trial judge. As the Supreme Court has stated:

> The difficult problem, of course, is to determine what matters we adjudicated in the antecedent suit.... Under these circumstances what was decided by the criminal judgment must be determined *by the trial judge* ... upon an examination of the record, including the pleadings, the evidence submitted, the instructions under which the jury arrived at its verdict, and any opinions of the court.

*Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951). Because the statute proscribes conduct other than society membership, an allegation that a person was convicted of a violation of section 20(2) does not, in and of itself, demonstrate that that defendant was a member of a triad society.

The government also presented no evidence that the person identified in the government's exhibits as Chu Kwong Yin is appellant Chu Kong Yin. Chu Kong Yin and Chu Kwong Yin are different names; they are spelled with different Chinese characters and have different "C.C.C." codes. (The C.C.C. code is a numerical designation used by Hong Kong officials to distinguish Chinese names despite varia-

tions in pronunciations.) Chu Kwong Yin's identity card number was shown as A–535533. Chu Kong Yin's identity card number is A–926562. Officer Holloway's assertion that "[p]rior to October 1980 ... few Hong Kong residents carried identification and many used a number of names or aliases," does not demonstrate that Chu Kong Yin used the alias Chu Kwong Yin or the identity card number A–535533.

The Government offered three documents to prove that Chu Kong Yin had been convicted of membership in a triad society: The certificate of trial in the name of Chu Kwong Yin, Chu Kong Yin's fingerprint card, and the "criminal record" of Chu Ping Yin, with attached declaration. Reduced to its essentials, the Government's argument is that since the "Criminal Record" in the name of Chu Ping Yin shows Chu Kwong Yin as an alias and Chu Kong Yin's identity card number, and that since Chu Kong Yin's fingerprint card lists a conviction for membership in a society in the "Remarks" section, then Chu Kong Yin and Chu Kwong Yin must be the same person. The government failed to point out, however, that these documents contain discrepancies and contradictions. For example, Chu Ping Yin's "Criminal Record," which shows the defendant, Chu Kong Yin's, identity card number, does not list Chu Kong Yin as an alias and Chu Kong Yin's 1988 fingerprint card does not show any aliases in the designated area.

The Government's theory is based on speculation, not relevant evidence. The record contains no explanation of the relationship that these documents bear to each other or the sources of the entries. The Government has offered no evidence which establishes that Chu Kong Yin used the name Chu Kwong Yin. Thus, there is no evidence from which a rational trier of fact could find, beyond a reasonable doubt, that the defendant, Chu Kong Yin, was convicted in 1974 of membership is a triad society. The double jeopardy clause thus bars retrial on counts one and four as well.

**B.** *Counts Three and Six: Conviction of a Crime of Moral Turpitude*

■ Chu also argues that the government introduced insufficient evidence to

demonstrate that he was convicted of a crime involving moral turpitude. The indictment listed Chu's knowledge that he was convicted of gambling, larceny by finding, and criminal intimidation as proof that he lied when he stated that he had not been convicted of a crime involving moral turpitude. The government argues that whether the alleged previous convictions were for crimes involving moral turpitude was a question properly submitted to the jury. Although this issue has not come before our court in a criminal case, we have frequently determined in reviewing deportation proceedings that the question whether a conviction under a statute constitutes a conviction of a crime involving moral turpitude is a question of law. *See, e.g., McNaughton v. INS*, 612 F.2d 457, 459 (9th Cir.1980) (per curiam) (determining *de novo* that conspiracy to affect the market price of stock by deceit with intent to defraud is a crime of moral turpitude); *Winestock v. INS*, 576 F.2d 234, 235 (9th Cir.1978) (determining *de novo* that dealing in counterfeit obligations is a crime of moral turpitude); *Guerrero de Nodahl v. INS*, 407 F.2d 1405, 1406–07 (9th Cir.1969) (determining *de novo* that childbeating is a crime of moral turpitude); *see also Jordan v. DeGeorge*, 341 U.S. 223, 227–32, 71 S.Ct. 703, 705–08, 95 L.Ed. 886 (1951) (tracing judicial definitions of moral turpitude, and citing with approval a court of appeals' statement that "fraud has ordinarily been the test to determine whether crimes not of the gravest character involve moral turpitude"). To constitute a conviction of a crime involving moral turpitude within the meaning of the Immigration and Nationality Act (the Act), the crime of which a defendant was convicted "must *necessarily* involve moral turpitude." *Tseung Chu v. Cornell*, 247 F.2d 929, 935 (9th Cir.) (emphasis in *Cornell*) (deportation proceeding), *cert. denied*, 355 U.S. 892, 78 S.Ct. 265, 2 L.Ed.2d 190 (1957). "A crime that does not necessarily involve evil intent, such as intent to defraud, is not necessarily a crime involving moral turpitude." *Hirsch v. INS*, 308 F.2d 562, 567 (9th Cir.1962). In the deportation context, "when by its definition [the crime] does not necessarily involve moral turpitude, the

alien cannot be deported." *Cornell*, 247 F.2d at 935 (quoting *United States ex rel. Robinson v. Day*, 51 F.2d 1022 (2d Cir. 1931)).

In this matter, the trial judge was required to, and failed to, determine whether convictions under the Hong Kong statutes penalizing gambling, larceny by finding, and criminal intimidation were convictions for crimes involving moral turpitude as a matter of law. Whether a crime involves moral turpitude within the meaning of the Act must be determined by standards prevailing in the United States. 37 Op.Atty. Gen. 293 (1933); 39 Op.Atty.Gen. 95, 96 (1937); 39 Op.Atty.Gen. 215, 220 (1938). The record of conviction is conclusive; judicial inquiry behind the record of the Foreign Court is inappropriate. 39 Op.Atty. Gen. 95 (1937); *see also McNaughton*, 612 F.2d at 458–59 (whether crime involves intent to defraud, thereby making it a crime involving moral turpitude, "is determined by the statutory definition or by the nature of the crime not by the specific conduct that resulted in the conviction"). Because analysis of the record of conviction is all that is required, we are able to conduct this legal inquiry without remand.

The government first argues that gambling is a crime of moral turpitude. The record of conviction for Chu's gambling offense merely states that he was convicted under section 6, ch. 148 of the Hong Kong Laws. This section provides:

> Any person who gambles in a gambling establishment commits an offence and is liable on conviction to a fine of $10,000 and to imprisonment for 3 months.

Hong Kong Laws, ch. 148, § 6. In support of its contention that gambling is a crime involving moral turpitude, the government cites dicta from *Charles O. Finley & Co., Inc. v. Kuhn*, 569 F.2d 527 (7th Cir.), *cert. denied*, 439 U.S. 876, 99 S.Ct. 214, 58 L.Ed.2d 190 (1978), which refers to "gambling, game-throwing or other conduct associated with moral turpitude" in discussing the power of the Commissioner of Major League Baseball. *Id.* at 537.

The government also points to Chief Inspector Hawkesley's testimony that Chu

hid under a table during a gambling raid and argues that Chu "displayed conscious knowledge of guilt of a morally undesirable crime." These arguments are not persuasive. As noted above, conduct outside the record of conviction is not relevant to our inquiry. Moreover, the Board of Immigration Appeals has held that gambling offenses are not crimes of moral turpitude as that term is used in our immigration laws. *See In re Gaglioti,* 10 I. & N. Dec. 719, 721 (1964) ("[T]he substantive crime or crimes involved in the gambling conspiracy charge do not involve moral turpitude."); *In re G,* 1 I. & N. Dec. 59, 61–62 (1941) (because gambling is "not generally regarded as morally wrong or corrupt, as offensive to the moral sense as ordinarily developed," it is not a crime of moral turpitude). We find the Board's reasoning persuasive and hold that Chu's conviction for gambling is legally insufficient to support the conclusion that he was convicted of a crime involving moral turpitude.

Second, the government argues that all crimes of larceny are crimes of moral turpitude as a matter of law. We need not determine whether larceny by finding is a crime of moral turpitude because the evidence does not demonstrate that Chu Ping Yin was convicted of that offense. Chu Ping Yin was conditionally discharged under section 35 of chapter 227 of the Hong Kong Laws. The conditional discharge statute, as in effect in 1966, provides:

> Where any person is charged before a magistrate with an offence punishable on summary conviction, and the magistrate thinks that the charge is proved but is of opinion that, having regard to the character, antecedents, age, health or mental condition of the person charged or to the trivial nature of the offence or to the extenuating circumstances under which the offence was committed, it is inexpedient to inflict any punishment or any other than a nominal punishment, the magistrate, *with or without recording a conviction,* may make an order either—
> (a) discharging the offender absolutely; or
> (b) discharging the offender conditionally on his entering into a recognizance

with or without sureties, in a sum not greater than $2,000, to be of good behaviour and *to appear for conviction and sentence or for sentence,* as the case may be, *when called on* at any time during such period, not exceeding 3 years, as may be specified in the order.

Hong Kong Laws, ch. 227 § 35(1) (renumbered as § 36 in 1981) (amended in 1986) (emphasis added). By its plain language, the statute makes clear that a conditional discharge may or may not include a conviction. Because the government's exhibits show that Chu Ping Yin was conditionally discharged *"to appear for conviction* and sentence *if called on,"* Exhibit B (emphasis added), the government's exhibits do not establish that Chu Ping Yin was convicted of larceny by finding.

The record does not demonstrate that a conviction for criminal intimidation is a conviction of a crime that necessarily involves moral turpitude. The criminal intimidation statute covers conduct such as "threatening to harm the reputation of a deceased person with the intent of 'alarming' a third person." Hong Kong Laws, ch. 205, § 2(b)(i). The government argues, without citation, that "[a] reasonable juror could find that 'criminal intimidation' is the equivalent [of] extortion." The government contends that the jury must determine whether a crime involves moral turpitude. As noted above, whether a crime involves moral turpitude is a question of law. The trial court should have determined as a matter of law whether a showing that a person was convicted of criminal intimidation is sufficient to demonstrate that that defendant was convicted of a crime involving moral turpitude. A "record of conviction ..., which contains no copy of the indictment and shows nothing as to the facts of the offense, does not support [a finding of moral turpitude]." *Hirsch,* 308 F.2d at 567.

Because the alleged convictions for gambling, larceny by finding, and criminal intimidation are legally insufficient to support a finding that Chu was convicted of a crime involving moral turpitude, the evidence was insufficient to support a convic-

tion on counts three and six. Accordingly, the double jeopardy clause bars retrial on these counts.

## CONCLUSION

The district court erroneously admitted exhibits containing hearsay over Chu's objection. Accordingly, we reverse the judgment of conviction on all six counts. Since even the erroneously admitted evidence was insufficient to support a conviction on counts one, three, four, and six, we hold that the double jeopardy clause bars retrial on those counts. We remand for a new trial on counts two and five. Because we reverse the judgment of conviction, we need not address Chu's contention that the district court's order imposing consecutive sentences totaling fifteen years in prison violates the eighth amendment.

The judgment of conviction of counts one, three, four, and six is REVERSED. The judgment of conviction on counts two and five is REVERSED AND REMANDED.

WALLACE, Circuit Judge, concurring and dissenting:

I join in the majority's decision that the Hong Kong evidence used against Chu constituted inadmissible hearsay, and that Chu's convictions must be reversed. I disagree, however, with the majority's conclusion that the double jeopardy clause bars Chu's retrial on certain of the counts, and I therefore dissent from that portion of the opinion.

The majority correctly sets out the standard to be used in analyzing the double jeopardy claims. We must not bar retrial if the evidence admitted against Chu, including the evidence we now deem inadmissible hearsay, sufficiently supports his convictions. *Lockhart v. Nelson*, 488 U.S. 33, 39–41, 109 S.Ct. 285, 290–91, 102 L.Ed.2d 265 (1988) (*Lockhart*). There is sufficient evidence to support Chu's convictions if, viewing all the evidence in the light most favorable to the prosecution, " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Adler*, 879

F.2d 491, 495 (9th Cir.1988) (*Adler*), quoting *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979) (emphasis in *Jackson*). In determining whether the convictions are supportable, we are required to draw all reasonable inferences from the evidence. *United States v. Arriaga–Segura*, 743 F.2d 1434, 1435 (9th Cir.1984). Although the majority recognizes this standard, I believe that it improperly applies its mandate.

### I

The majority first concludes that the government may not retry Chu on counts one and four, which allege that he lied on his residency application when he stated that he had not been a member of any organization or society. To prove that Chu had lied, the government presented evidence that Chu had in fact been convicted in 1974 of illegal membership in a triad society. On this basis, the jury convicted Chu on counts one and four.

The majority holds, however, that there is insufficient evidence to support Chu's conviction on these counts. First, it observes that the Hong Kong statute under which Chu was convicted proscribes conduct other than triad society membership. Maj. op. at 1002. It therefore concludes that an allegation that Chu was convicted for violating that statute "does not, in and of itself, demonstrate that [Chu] was a member of a triad society." Maj. op. at 1002. But the majority ignores the fact that the government did not merely allege that Chu had violated the general statute; it presented evidence to show that Chu was guilty of triad society membership. For example, all three of the Hong Kong records that identify Chu's 1974 crime specify that he was found guilty of "membership of a triad society." The cumulative criminal record does not even identify the statute number; it labels the crime simply as a membership crime. The inferences drawn from the evidence therefore support the jury's conclusion that Chu was convicted of *membership* in a triad society. The majority replies that the district judge was

wrong in allowing the jury to draw these inferences, but instead should have himself determined whether Chu's prior conviction rested on triad society membership or another sort of violation. Maj. op. at 1002. Even assuming this error, I would hold that the proper remedy is to remand these counts to the district court with instructions to investigate the underlying nature of Chu's 1974 Hong Kong conviction. No rationale supports the view that such an error bars retrial.

As further support for its conclusion that the evidence is insufficient to prove that Chu lied when he stated that he had never belonged to any organization or society, the majority observes that the 1974 triad society membership conviction is under the name of Chu *Kwong* Yin, rather than Chu Kong Yin. The issue that arises is whether Chu, the defendant, was the person convicted of triad society membership. The majority analyzes the evidence offered by the government on the identity issue, finds that some of it contains discrepancies and contradictions, and therefore concludes that the evidence is insufficient to demonstrate that Chu was the person convicted. Maj. op. at 1002–1003. In concentrating on the reasons to believe that Chu was *not* the person convicted in 1974, the majority ignores the reasons to believe that he *was* the one convicted.

For example, Chu Kwong Yin's triad society membership conviction, identified as case number 5175/73, is listed on the criminal record entered into evidence against the defendant. Although the criminal record is under the name Chu Ping Yin, it contains the 1981 gambling conviction of Chu Kong Yin, case number 9248/81. Fingerprint documentation proves that the Chu on trial in this case was the person convicted of that gambling violation. Thus, whatever aliases were used, the criminal record supports a reasonable inference that the same person was convicted of gambling in 1981 and triad society membership in 1974. The fingerprints demonstrate that Chu, the defendant, is that person. Other evidence also supports this conclusion. Chu's Hong Kong fingerprint records, taken at the time of his arrest for the 1981 gambling viola-

tion, are identified by C.R.O. No. 7071–66. This number, which is assigned to an offender upon his first arrest, is used as identification for a listing of previous crimes on Chu's fingerprint card, a listing that includes the 1974 triad society membership conviction. Moreover, C.R.O. No. 7071–66 identifies the criminal record that contains both Chu's 1981 gambling conviction and the 1974 triad society membership conviction at issue. Thus, repeat identification by C.R.O. No. 7071–66 supports the conclusion that Chu was the person convicted of triad society membership.

I do not dispute the majority's assertion that there are reasons that auger against such a view. Such is the case in most trials, but a reviewing court has the duty to allow the conclusions of a rational jury to stand. The jury in this case reviewed the conflicting evidence and concluded that Chu was the person convicted in 1974, and that he was convicted of triad society membership. Thus, it convicted Chu on counts one and four for lying on his application. This conclusion was a rational one based upon the evidence presented, and it is not our job to bar retrial on the ground that we disagree with the inferences drawn by the jury. *See Adler*, 879 F.2d at 495.

I can only assume that the majority's decision to bar retrial is colored by the fact that we now deem most of the evidence used to convict Chu to be inadmissible hearsay. I agree that the evidence was hearsay, and therefore would reverse the convictions. But the evidentiary and double jeopardy inquiries must remain separate; *all* evidence, whether it is now deemed admissible or inadmissible, is viewed equally, in the light most favorable to the prosecution. *Lockhart*, 488 U.S. at 39–41, 109 S.Ct. at 290–91. The reasonable inferences that favor the prosecution demonstrate to my satisfaction that the government should be allowed to retry Chu on counts one and four with any admissible evidence that it could offer.

II

Chu was also convicted on counts three and six, which charged that Chu lied on his

application when he stated that he had never committed or been convicted of a crime of moral turpitude. The indictment charged that Chu lied while knowing "that he had been convicted of the crimes of Larceny by Finding, Criminal Intimidation, and Gambling in a Gambling Establishment." The majority concludes that there is insufficient evidence to support the convictions on counts three and six, because gambling and criminal intimidation do not involve moral turpitude and the government failed to prove that Chu had been convicted of larceny. Maj. op. at 1002–1005.

I write separately on this issue to point out the technical nature of the majority's decision on the larceny issue. The majority observes that Chu was conditionally discharged under Hong Kong laws on the charge of larceny by finding. Maj. op. at 1004–1005. I agree with the majority that proof of such a conditional discharge does not equal proof of a conviction. Chu's conditional discharge, however, is evidence that Chu *committed* larceny. The Hong Kong statute in effect at the time of Chu's larceny arrest provides that a conditional discharge is appropriate only if a magistrate "thinks that the charge *is proved*," and directs the magistrate to consider "the extenuating circumstances under which *the offence was committed*." Hong Kong Laws, ch. 227, § 35(1) (renumbered as § 36 in 1981) (amended in 1986) (emphasis added). Maj. op. at 1004–1005. Chu stated on his application that he had never committed or been convicted of a crime involving moral turpitude. Chu's conditional discharge is proof that he *committed* larceny. We have held as a matter of law that larceny involves moral turpitude. *United States v. Villa–Fabela*, 882 F.2d 434, 440 (9th Cir. 1989); *Tseung Chu v. Cornell*, 247 F.2d 929, 933 n. 4 (9th Cir.), *cert. denied*, 355 U.S. 892, 78 S.Ct. 265, 2 L.Ed.2d 190 (1957). Thus, the evidence presented at trial is sufficient to prove that Chu lied when answering the moral turpitude question on his application.

However, the indictment charged not only that Chu lied in answering the question, but that he lied while knowing "that he had been *convicted* of the crime[ ] of Larceny." Because the government failed to demonstrate that Chu had been convicted of larceny, it failed to satisfy all that was required by the narrow indictment charge. Thus, the majority holds that the government is barred from retrying Chu on counts three and six, as drafted. This double jeopardy ruling should be viewed in a correspondingly narrow context, for the ruling would not bar Chu's trial on a charge that he lied on the moral turpitude question while knowing that he had *committed* larceny. Given the inherent limitation of the majority's holding, the government may retry Chu on this theory.