56 F.3d 75
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Philip SIOTOS, Defendant-Appellant.
 No. 94-10223.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 5, 1995.
Decided May 19, 1995.
 
 Appeal from the United States District Court, for the District of Hawaii, D.C. No. CR-92-01003-2-HMF; Harold M. Fong, District Judge, Presiding.
 D. Hawai'i
 REVERSED.
 Before: PREGERSON, KOZINSI, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Philip Siotos appeals his jury conviction and sentence under the Sentencing Guidelines for conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 846 and 841(b)(1)(B). We have jurisdiction over this appeal under 28 U.S.C. Sec. 1291. We reverse and remand.
 
 I. BACKGROUND
 
 3
 This case arises from a cocaine sale set up by an undercover police officer with the Honolulu police department, Detective Joyce Alapa.[1] Siotos was indicted along with two co-conspirators, Ioannis "John" Kouvlis, and Randall "Steve" Besich. Kouvlis testified for the government at Siotos's trial, pursuant to a plea agreement. Besich remains at large.
 
 
 4
 According to the government's theory in the case, Siotos was a conspirator in the cocaine buy because he introduced Alapa to the purchaser of the cocaine, John Kouvlis, and because he helped to negotiate the price of the cocaine. The money for the cocaine came from Besich.
 
 
 5
 At the trial, the testimony as to the existence of the conspiracy and Siotos's involvement in it came from Alapa and Kouvlis. Alapa testified that she had been hanging around the Greek community in Honolulu for some time because she was working undercover to bust Vassilios Liaskos, a man who was the head of a separate, large cocaine conspiracy. Alapa met Siotos one night in a Greek restaurant. She testified that she wanted to get to know Siotos because she thought he might give her an "in" with Liaskos. Alapa had a few dates with Siotos over the course of a few months. Alapa told Siotos that she sold cocaine for a living.
 
 
 6
 Kouvlis testified that Besich was continually asking Siotos to introduce him to Alapa because Besich had found out that Siotos's new girlfriend was a cocaine dealer. According to Kouvlis, Siotos did not want to introduce Besich to Alapa.
 
 
 7
 The way the deal was supposed to work, according to Kouvlis, was that Kouvlis was to get the money to buy the cocaine from Besich and then he was to meet Alapa to purchase the cocaine from her. Kouvlis testified that he and Siotos agreed to buy two kilograms of cocaine for $40,000, and that they were then going to turn around and sell it back to Besich for $60,000. The plan was for Kouvlis and Siotos to split the $20,000 profit.
 
 
 8
 After Alapa called Kouvlis and told him that the "steaks" were in, Kouvlis met Alapa at a shopping center and gave her a manila envelope containing $30,000.[2] Kouvlis was arrested. Police later extracted a fingerprint of Randall Besich from the money envelope.
 
 
 9
 Siotos was not present at the shopping center where the exchange took place. Alapa arrested Siotos later at the construction company where he worked. Siotos told Alapa that he was not guilty of anything and that if he were, he would have run like the "other guy" (presumably referring to Besich, who disappeared after Kouvlis did not return from his trip to go buy drugs). Siotos told Alapa that he introduced Kouvlis to her just to do her a favor.
 
 
 10
 The government also called as a witness Dion Robesky. Robesky did not testify about the conspiracy between Siotos, Kouvlis and Besich. Instead, Robesky testified that he had purchased small amounts of cocaine from his roommate, Frank Hall, for about six months during the last year. Robesky also testified that he would order the drugs from Hall and Hall would get the drugs from "Stephan." During his testimony, Robesky was shown a photograph of Randall Besich. Robesky identified him as "Stephan." Robesky also testified that in June 1992 (around the time of Kouvlis's arrest), Besich showed up at Hall and Robesky's house one night acting very nervous. Besich did not have any drugs to sell them that night.
 
 
 11
 Siotos objected to the testimony, arguing that it was irrelevant, and that its admission was highly prejudicial to him. SER at 7, 30. The government responded that Robesky's testimony was relevant because it provided circumstantial evidence that Besich was a drug dealer and because it provided corroboration as to his identity. SER at 12-13. The government also contended that Robesky's account of Besich's nervousness and his lack of drugs on that night in June proves that Besich was the same man who almost got busted when he gave the money to Kouvlis for drugs.
 
 
 12
 After hearing the government's proffer as to why the Robesky evidence was relevant, the district court first commented that it was "a whole bunch of circumstantial [evidence]" and that it was "very remote." SER 13-14. After extensive argument from both parties, the court stated "I feel a little sense of desperation on the part of the government" and added, "the prejudice is obvious ... this jury will, or might try to get a totally remote and unrelated sale and attribute it to Mr. Siotos." SER at 31. The court ultimately decided to allow the evidence in, however, for the limited purpose of identifying Randall Besich. After the direct examination of Dion Robesky, the court cautioned the jury that the drug conspiracy Robesky described had nothing to do with Siotos.
 
 
 13
 The government also moved to have records of telephone calls from Randall Besich's cellular phone to Hall and Robesky's telephone admitted into evidence. Siotos made the same objection to the admission of the records as he had to the admission of Robesky's testimony. The court ruled that to be consistent with its earlier ruling on Robesky's testimony, it would allow in evidence of the telephone records, stating: "So, I guess my only thing is I could be wrong then [in allowing in the Robesky testimony], and I'll be royally wrong now by letting the [telephone records] in." ER at 12.
 
 
 14
 Siotos was convicted of Count I (conspiracy to possess with intent to distribute cocaine), and acquitted of Count II (attempted possession with intent to distribute cocaine). At his sentencing, the district court found that Siotos had obstructed justice by committing perjury at trial. The court added two points to his offense level, and sentenced him to 78 months in prison. The court also imposed a five thousand dollar fine and a five year term of supervised release.
 
 II. ANALYSIS
 A. THE ROBESKY EVIDENCE
 
 15
 We review the evidentiary rulings of the district court for an abuse of discretion. United States v. Blaylock, 20 F.3d 1458, 1462 (9th Cir. 1994). We will reverse the district on the basis of an evidentiary ruling if the error more likely than not affected the verdict. United States v. Yin, 935 F.2d 990, 994 (9th Cir. 1991).
 
 
 16
 Siotos argues that the district court erred in admitting Robesky's testimony about drug deals involving Robesky, his roommate Hall, and Randall "Steve" Besich, because this evidence was not relevant, and because it was prejudicial. In response to this, the government asserts that Robesky's testimony "provided direct evidence of the charged conspiracy by identifying Besich as a conspirator and confirming Besich's role in the conspiracy as the purchaser and ultimate distributor of the drugs." Red br. at 17 (emphasis in original). Therefore, contends the government, this evidence was highly probative of the charged conspiracy.
 
 
 17
 We disagree with the government. The Robesky evidence did not provide direct evidence of the charged conspiracy. The acts to which Robesky testified were not acts done in furtherance of the charged conspiracy. At most, the Robesky evidence provided circumstantial evidence as to the identity of Besich.
 
 
 18
 The court admitted the testimony and the telephone records on the theory that they provided evidence as to Besich's identity. In making its proffer to the court, the government complained that without Robesky, it would have only the testimony of Kouvlis to show that Besich is a drug dealer. SER 21-22.
 
 
 19
 In making that argument, the government ignored the fact that it not only had Kouvlis's testimony mentioning Besich and identifying him in a photograph, but it also had the testimony of Agent Alapa. Alapa testified that Siotos told her that Kouvlis was buying the drugs for Steve, and that Siotos also said that if he were guilty he would have run "like that guy Steve." Moreover, the government also had three different types of physical evidence linking Besich to the conspiracy: (1) Besich's pager number in Kouvlis's pocket; (2) Besich's fingerprint on the money envelope; and (3) telephone records of calls between Besich and Siotos and Besich and Kouvlis.
 
 
 20
 Because the government had ample evidence from which it could establish Besich's identity, Robesky's testimony and the phone records of calls to Robesky were clearly cumulative. Thus their probative value was negligible. Furthermore, Siotos was undoubtedly prejudiced by the admission of testimony and phone records concerning a conspiracy that was not charged in the indictment and that was entirely separate from the drug sale at issue.
 
 
 21
 In balancing the minimal probative value of this evidence against the prejudice it engendered, we conclude that the district court abused its discretion in admitting it. We also believe that this error more likely than not affected the verdict. The only physical evidence linking Siotos to the cocaine sale was telephone records between him and Besich. The other evidence was in controversy. Alapa testified that she had certain conversations with Siotos,[3] and he denied it. Siotos also denied that he had worked out a deal with Kouvlis, in contrast to Kouvlis's testimony (which he gave pursuant to a plea agreement). The government then persuaded a reluctant court to admit evidence of a completely separate conspiracy, and it is quite probable that this damaging evidence affected the verdict.
 
 
 22
 We thus reverse Sioto's conviction, and remand for a new trial.[4]
 
 III. CONCLUSION
 
 23
 The district court erred in admitting the evidence concerning a conspiracy unrelated to the one charged.
 
 
 24
 REVERSED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 During the course of this transaction, Alapa was acting as a task force agent with the Drug Enforcement Administration
 
 
 [2]
 Alapa and Kouvlis had agreed that she would sell him two kilograms, and that he would pay her $30,000 on delivery and $10,000 a week later
 
 
 [3]
 Alapa did not tape any of these incriminating conversations, although she did tape such conversations with Kouvlis
 
 
 [4]
 Because we reverse Siotos's conviction on this ground, we need not reach his other claims of error, including his claim of sentencing error